# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1108

_____

Pony Computer, Inc.,                          *
                                              *
              Appellant,                      *
                                              *   Appeal from the United States
       v.                                     *   District Court for the
                                              *   Eastern District of Missouri.
Equus Computer Systems                        *
of Missouri, Inc.; Equus                      *
Computer Systems, Inc.;                       *
Xiao Mei Zhou; Adam Jones;                    *
Benjamin Liu; Andy Juang;                     *
Der-Hisiang Hsueh; John Doe,                  *
                                              *
              Appellees.                      *
                                              *

_____

Submitted:  June 12, 1998
Filed:  December 11, 1998

_____

Before HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
       PANNER,[1] District Judge.

_____

HANSEN, Circuit Judge.

---

   [1]The Honorable Owen M. Panner, United States District Judge for the District
of Oregon, sitting by designation.

Pony Computer, Inc. (Pony) appeals the transfer of this diversity case from the United States District Court for the Northern District of Ohio[2] to the United States District Court for the Eastern District of Missouri. Pony also appeals the district court's[3] dismissal of three of its claims for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), and the adverse grant of summary judgment against it, see Fed. R. Civ. P. 56(c), regarding its remaining claims. Pony argues that Ohio law governs this case and that summary judgment was inappropriately granted before the completion of discovery. We affirm.

## I.

Pony is an Ohio corporation, maintaining its computer system and data in Solon, Ohio, with a branch operation in St. Louis, Missouri. Defendant Equus Computer Systems of Missouri, Inc. (Equus of Missouri) is a Minnesota corporation with its principal place of business in St. Louis, Missouri. Defendant Equus Computer Systems, Inc. (Equus) is also a Minnesota corporation with its principal place of business in St. Paul, Minnesota.

Andy Juang, a Minnesota resident, started Equus in 1992 when he bought out Pony's St. Paul branch. Equus opened an office in St. Louis in December 1995. Juang hired Xiao Mei Zhou, a Missouri resident, in October 1995 to work in the St. Louis branch, beginning formal employment December 1, 1995. At the time, Zhou was employed in Pony's Return Merchandise Authorization (RMA) department as a data

---

[2]The Honorable Patricia A. Gaughan, United States District Judge for the Northern District of Ohio.

[3]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

entry clerk. Zhou performed some initial tasks to open Equus of Missouri's St. Louis branch during the end of November 1995, including: advertising for employees in the St. Louis Post-Dispatch; using her home address and phone number to purchase and receive computer equipment; and contacting former Pony employees about potential employment with Equus. Some of this work was performed while Zhou was on the job at Pony, including a one-time use of Pony's fax machine and the furnishing of her work phone number to the Post-Dispatch as a contact number. In conjunction with Zhou's clerical responsibilities at Pony, she had limited access to Pony's computer files, which she accessed with a password, including customer invoices, shipping records, receiving records, credit records, and on-site warranty records. Adam Jones, a resident of Missouri, is also a former Pony employee in its shipping and warehouse department who left to work for Equus of Missouri. He likewise had limited access to Pony's computer files, via a password, including shipping records and customer payment records in the warehousing department.

Pony originally filed this diversity case in federal court in Ohio against Equus, Equus of Missouri, Zhou, Jones, Juang and two other Equus managers, alleging nine counts of Ohio state law claims, including, inter alia, tampering with computer data, breach of fiduciary duty, unfair competition, fraud, disclosure of trade secrets, and tortious interference with business contracts. The Ohio district court dismissed the case for lack of personal jurisdiction and transferred it to the United States District Court for the Eastern District of Missouri, a court in which the action could have been brought under 28 U.S.C. § 1406(a) (1996). Pony then filed a first amended complaint adding an additional count under Missouri's computer tampering statute. The Missouri district court dismissed three of Pony's counts under rule 12(b)(6) and granted the defendants summary judgment on the remaining counts. Pony appeals.

## II.

3

## A.      Transfer and Choice of Law Rules

Initially, Pony appeals the transfer by the United States District Court for the Northern District of Ohio to the United States District Court for the Eastern District of Missouri.  We lack jurisdiction to review this transfer because it was made by a district court outside the Eighth Circuit.  28 U.S.C. § 1294 (1996).  See also United States  v. Copely, 25 F.3d 660, 662 (8th Cir. 1994); TEC Floor Corp. v. Wal-Mart Stores, Inc., 4 F.3d 599, 602-03 (8th Cir. 1993).

Pony argues that the law of Ohio should govern this case.  We disagree.  The United States District Court for the Northern District of Ohio transferred the case for improper venue pursuant to 28 U.S.C. § 1406(a) (1996).  Which state law applies in a diversity case that has been transferred between federal courts is determined by the nature of the transfer.  In the present context--a transfer due to improper venue pursuant to § 1406(a)--we apply the law of the transferee forum.  See Wisland v. Admiral Beverage Corp., 119 F.3d 733, 735-36 (8th Cir. 1997), cert. denied, 118 S. Ct. 1043 (1998).  Thus, the choice of law rules of Missouri, the transferee state, apply to this case.

The Supreme Court of Missouri adopted the principal contacts rule of section 145 of the Restatement (Second) of Conflict of Laws (1971) for choice of law problems in tort actions.  See Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. 1969) (en banc); D.L.C. v. Walsh, 908 S.W.2d 791, 794 (Mo. Ct. App. 1995).  In conflicts cases, the forum state will apply its own procedural rules but must apply substantive law based on its conflicts of law doctrine.  D.L.C., 908 S.W.2d at 794.

Section 145 of the Restatement (Second) provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that

4

issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

   (a) the place where the injury occurred,
   (b) the place where the conduct causing the injury occurred,
   (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
   (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 145 provides direction in the application of the general principles found in section 6, which are the heart of the choice of law considerations. D.L.C., 908 S.W.2d at 795; Greco v. Anderson, 615 S.W.2d 429, 432 (Mo. Ct. App. 1980). Section 6 sets forth the general principles as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

   (a) the needs of the interstate and international systems,
   (b) the relevant policies of the forum,
   (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) ease in the determination and application of the law to be applied.

5

The defendants' actions of which Pony complains--including accessing and taking computer information, providing confidential information to Equus and Equus of Missouri, contacting former Pony employees, and working for Equus of Missouri while still employed by Pony--all occurred in Missouri.  Pony was allegedly injured by the disruption of its St. Louis branch during the height of its busy season and its loss of St. Louis market share.  Equus of Missouri is located in Missouri.  Defendants Zhou, Jones, and Hsueh are Missouri residents.  The only tie to Ohio is the password-accessible computer information which is maintained in Pony's headquarters and the indirect injury to Pony headquarters through the alleged unfair competition between Equus of Missouri and Pony's St. Louis branch.  Two Pony employees were contacted in Ohio but meetings between them and Equus of Missouri representatives occurred in Missouri.  Regardless of whether these Ohio contacts would subject the defendants to personal jurisdiction in Ohio, the application of the choice of law principles of section 6(2) clearly reveals that Missouri has the greater interest in these parties and occurrences.  Thus, the district court correctly applied Missouri law.

## B.    Adequacy of Discovery

Pony contends that the district court erred in granting summary judgment prior to the completion of discovery.  "A trial court's determination that a claim is ripe for summary judgment is reviewed for abuse of discretion."  In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig., 113 F.3d 1484, 1489 (8th Cir. 1997); see also Humphreys v. Roche Biomed. Lab., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993).  Discovery does not need to be complete before a case is dismissed on summary judgment.  TMJ, 113 F.3d at 1489.  However, summary judgment is only proper if the nonmovant has had adequate time for discovery.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); TMJ, 113 F.3d at 1490.  The nonmovant must make some showing that discovery has been inadequate.  Absent such a showing, summary judgment is appropriate despite incomplete discovery.  See Dulaney v. Carnahan, 132 F.3d 1234,

6

1238-39 (8th Cir. 1997) (affirming summary judgment where nonmovant had not filed a Fed. R. Civ. P. 56(f) motion for continuance and made no affidavit regarding evidence to be obtained from additional discovery); <u>Humphreys</u>, 990 F.2d at 1081 (providing summary judgment is appropriate despite a Rule 56(f) motion for continuance where nonmovant failed to file affidavit specifying what further discovery might unveil); <u>United States v. Light</u>, 766 F.2d 394, 397 (8th Cir. 1985) (affirming summary judgment where parol evidence rule would bar evidence the nonmovant sought from additional discovery).

The case management order allowed for nearly one year of discovery. Though Pony claimed its discovery was inhibited by the defendants' objections to some of its interrogatories, Pony failed to conduct further discovery upon receiving answers to the interrogatories one month prior to the discovery deadline. The additional discovery sought pertains to the defendants' communications providers and phone numbers in order to ascertain the number and timing of communications among the defendants and between the defendants and Pony's prior employees. However, Pony fails to explain how this additional discovery will provide support for any of its claims other than to state that it found out about Zhou's dealings with Equus of Missouri representatives through an examination of telephone records. Inadequate discovery cannot be a shield against summary judgment without a showing of a meritorious opposition. <u>Light</u>, 766 F.2d at 397. The district court found that Pony's request for an extension of the discovery deadline was a request for an unbounded fishing expedition. Based on the record, we are satisfied that the district court did not abuse its discretion in denying Pony's request for an extension of discovery.

## C.    Summary Judgment

Pony contends that genuine issues of material fact preclude the entry of summary judgment and that the defendants are not entitled to judgment as a matter of law. We review the district court's grant of summary judgment de novo, viewing the record in

a light most favorable to the nonmoving party. We will affirm only if there are no genuine issues of material fact in the record and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. The district court rendered summary judgment against Pony on seven counts of Pony's ten-count complaint.

Count II of Pony's first amended complaint alleges defendants Zhou and Jones violated MO. ANN. STAT. § 537.525 (West 1988) by tampering with computer data and equipment. Section 537.525 provides: "In addition to any other civil remedy available, the owner or lessee of the computer system, computer network, computer program, computer service or data may bring a civil action against any person who violates sections 569.095 to 569.099 RSMo, for compensatory damages . . . ." Pertinent to this case, MO. ANN. STAT. § 569.095 (West Supp. 1998) provides:

> A person commits the crime of tampering with computer data if he knowingly and without authorization or without reasonable grounds to believe that he has such authorization:
> . . . .
>
> (3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network; or
>
> (4) Discloses or takes a password, identifying code, personal identification number, or other confidential information about a computer system or network that is intended to or does control access to the computer system or network;
>
> (5) Accesses a computer, a computer system, or a computer network, and intentionally examines information about another person;
>
> (6) Receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection.

8

Pony claims that Zhou and Jones disclosed confidential information learned while accessing the Pony computer network in the course of their employment with Pony. The affidavits of Joseph Chou, Pony's president, and Yunchi Chen, Pony's St. Louis branch manager, are the only evidence of any disclosure. However, these affidavits are merely conclusory, failing to enumerate specific evidence of any disclosure. Summary judgment is appropriate where there is no independent evidence, other than the petitioner's unsubstantiated allegations. Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994). Thus, summary judgment was appropriate as to Count II.

Count III alleges breach of fiduciary duty. A confidential relationship between employer and employee giving rise to fiduciary duties exists if (1) there is an express understanding that the employee is receiving confidential information, or (2) the employee acquired the information in such a way that he must have known of its confidential nature. National Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 35-36 (Mo. 1966) (en banc). Pony claims that because Zhou and Jones could only access the Pony computer with a password and because they had limited access to only the information they needed for their job, each must have known of the confidential nature of the information. Pony paints too broad a picture of a confidential relationship. Zhou's duties were primarily clerical. She accessed the computer files to enter defective parts to be returned to the supplier. Jones' access to computer information was similar, involving warehousing duties. To base fiduciary responsibilities on passwords and limited file access would make nearly any employee with any controlled computer access a confidant. Pony has failed to enumerate facts to support a finding that either Zhou or Jones must have known they were receiving confidential information. Summary judgment was appropriate as to Count III.

Count V alleges unfair competition, which requires a showing of: (1) the existence of a trade secret, (2) communication of the trade secret to another, (3) while that party was in a position of trust and confidence, and (4) the use of the trade secret

9

to injure the plaintiff. <u>Reddi-Wip, Inc. v. Lemay Valve Co.</u>, 354 S.W.2d 913, 917 (Mo. Ct. App. 1962). Even if the existence of a trade secret is conceded, Pony still failed to show proof in the record that either Zhou or Jones was in a position of confidence, that either of them communicated any information to the other defendants, or that any of the defendants used the alleged trade secrets to injure Pony. Thus, Count V fails for the reasons that Counts II and III fail.

Count VII alleges fraud against Zhou and Jones for concealing their alleged disloyal and anticompetitive acts while employed by Pony. Fraud requires a showing of: (1) a representation, (2) that is false, (3) and material, (4) of which the speaker knows to be false or is ignorant of its truth, (5) made with the intent that the representation be relied upon, (6) to a hearer who is ignorant of the falsity of the representation, (7) who in fact relies on the representation, (8) who has a right to rely on it, and (9) who suffers proximate and subsequent damages. <u>Missouri ex rel. Painewebber, Inc. v. Voorhees</u>, 891 S.W.2d 126, 128 (Mo. 1995) (en banc). Silence can be considered a misrepresentation if the one making the misrepresentation has a duty to speak, which duty arises from a confidential relationship. <u>See</u> <u>id.</u> at 129. The misrepresentation which Pony asserts resulted in fraud was Zhou's and Jones' silence regarding their future employment with Equus of Missouri. However, we have already concluded that neither of these defendants was in a position of confidence. Furthermore, employees can agree to compete against their employer in the future and may even plan and prepare for it while still employed. <u>Metal Lubricants Co. v. Engineered Lubricants Co.</u>, 411 F.2d 426, 429 (8th Cir. 1969) (citing <u>National Rejectors, Inc. v. Trieman</u>, 409 S.W.2d 1 (Mo. 1966) (en banc)). Neither Zhou nor Jones had an obligation to disclose their future employment with Equus to Pony since neither was in a confidential relationship with Pony. Thus, Pony has failed to present facts in the record to support its fraud claim.

Counts VIII and X allege tortious interference with Pony's customers and employees. Tortious interference requires: (1) a contract or valid business expectancy,

(2) known by the defendant, (3) a breach induced by the defendant's intentional interference, (4) without justification, and (5) damages. Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) (en banc). Pony claims that the defendants raided it of its employees, contacting employees that had noncompete agreements with Pony. Of the employees that actually left to work for Equus, Pony has not produced, nor alleged, a noncompete agreement. There is nothing wrong with offering employment to an at-will employee to compete with his current employer, where the employee is not subject to a covenant not to compete or a confidential relationship. Metal Lubricants, 411 F.2d at 429-30. Though the defendants allegedly approached two employees with non-compete agreements, neither accepted employment with Equus. Thus, there was no breach of contract. Pony fails to allege, or provide evidence of, facts regarding business expectancies with its clients. Counts VIII and X were properly dismissed.

Count IX alleges that the defendants conspired to convert Pony's trade secrets. To establish a conspiracy under Missouri law, a claimant must show that: "(1) two or more persons, (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged." Rice, 919 S.W.2d at 245. Pony has failed to provide evidence of an unlawful act, namely that Zhou and Jones provided trade secret information to Equus who then used it to harm Pony. Reading the evidence in the light most favorable to Pony, Pony has failed to set forth proof of a conspiracy.

## D.    Dismissal Under Fed. R. Civ. P. Rule 12(b)(6)

Pony appeals the dismissal of two of the three claims dismissed under Rule 12(b)(6).[4] Pony asserts that Count IV, alleging breach of a duty of loyalty, was

---

[4]Appellant's brief states that it is appealing the dismissal of Count I for failure to state a claim upon which relief can be granted. However, appellant doesn't address Count I in the 12(b)(6) section of its brief but rather lumps it in its discussion of Count II's grant of summary judgment. Count I was an action for negligence per se based on

improperly dismissed for failure to state a claim under Rule 12(b)(6), because it states a cause of action in Missouri.  If in fact Missouri recognizes a breach of a duty of loyalty, it is only within the larger class of actions of breach of a fiduciary duty, of which we have already disposed.  See, e.g., Peterson v. Continental Boiler Works, Inc., 783 S.W.2d 896, 904-05 (Mo. 1990) (en banc) (discussing a corporate director's duty of loyalty within the context of a breach of a fiduciary duty).  Additionally, Pony concedes that such an action would require a confidential relationship.  As stated above, Pony presented no evidence of such a relationship.  It is well settled that "we may affirm the district court's judgment on any basis supported by the record."  Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998) (internal quotations omitted).  Count IV was properly dismissed.

Count VI alleges a faithless employee cause of action.  Pony asserts Missouri courts have recognized such an action by citing to two cases which use the term "faithless employee."  See American Sash & Door Co. v. Commerce Trust Co., 56 S.W.2d 1034, 1037 (Mo. 1932) (en banc); National Rejectors, 409 S.W.2d at 43.  However, neither case involves nor creates an action based on being a faithless employee and neither requires the forfeiture of wages as the appropriate sanction, as Pony seeks in its complaint.  Thus, this count was properly dismissed under Rule 12(b)(6).  Even if such a claim were actionable in Missouri, Pony must demonstrate that Zhou's and Jones' acts were so disloyal and dishonest as to permeate their service to Pony.  See Hein v. TechAmerica Group, Inc., 17 F.3d 1278, 1282 (10th Cir. 1994) (describing an action for faithless employee).  Pony has not provided evidence that Zhou or Jones provided trade secret information to Equus.  Pony has not alleged that either failed to perform their duties.  Thus, even if such a claim existed in Missouri, of which we are not convinced, Pony has failed to provide sufficient evidence of its

---

alleged violation of the statutes in Count II but appellant doesn't address the negligence aspect of Count I in its discussion. Thus, we decline to address Count I in this opinion.

elements. Thus, it was properly subject to dismissal as a matter of law on summary judgment. Dismissal of Count VI was proper.

## III.

Accordingly, for the reasons stated above, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.