**SCHMERSAHL, TRELOAR & CO., P.C., Plaintiff/Appellant,**

v.

**Tim McHUGH, Defendant/Respondent.**

**No. ED 76363.**

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 1, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 7, 2000.

Application for Transfer Denied Oct. 31, 2000.

**2.** Appellant's Motion to Dismiss Rheem's Cross–Appeal is denied.

Charles S. Kramer, Michael A. Ellenhorn, Riezman Berger, P.C., St. Louis, for appellant.

Stuart R. Berkowitz, Platke and Berkowitz, L.L.P., St. Louis, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

This case involves an attempt by an employer to recover liquidated and actual damages against its former employee for breach of a covenant not to "solicit, persuade, induce or encourage" employer's employees to terminate their employment for a period of three years after the former employee's termination. Twenty-one months after leaving employer, the former employee told one of employer's employees about a job opportunity, but that employee remained with employer with no change in compensation. Following a bench trial, the trial court found the covenant and liquidated damages clause were not enforceable and entered judgment in the former employee's favor. On appeal employer argues that the covenant and liquidated damages clause are enforceable contract provisions. We affirm for the reason that the covenant restrains trade and does not fall within the class of restrictive covenants which may be enforced in Missouri because it is not directed to the protection of trade secrets or customer contacts.

Plaintiff, Schmersahl, Treloar & Co., P.C., an accounting firm, required all of its employees, both professional and clerical, to sign a Confidentiality and Non–Solicitation Agreement which contained a non-solicitation covenant that prohibited plaintiff's employees, first, from soliciting business from its clients and, second, from soliciting or encouraging its employees to terminate their employment:

2. *Non–Solicitation Covenant.* In consideration of Employee's employment and/or continued employment, Employee agrees that during the term of the employment and for a period of three (3) years following termination of employment (regardless of which party termi-nates the employment), Employee will not, directly or indirectly, as an employee, employer, consultant, agent, sole proprietor, principal, associate, partner, stockholder, corporate officer, director, or in any other individual or representative capacity:

a). Solicit, service, refer, attempt to divert, take away, or accept business from, any clients of S & A for any purpose that is in anyway competitive with S & A, or supply any information to any other person, firm, or corporation for such purpose; or

b). Solicit, persuade, induce, or encourage any other employees or agents of S & A to terminate employment with the Company.

The agreement provided for stipulated damages "for violations of paragraph 2(b) above, 30% of the gross salary of each person that the Employee solicits, persuades, induces or encourages to terminate employment with S & A in violation of paragraph 2(b) at the time of said solicitation." All of plaintiff's employees were employees at will.

Defendant, Tim McHugh, an accountant hired by plaintiff in 1994, signed this agreement on April 18, 1996. Defendant left plaintiff to take a position with a different accounting firm in December, 1996. Approximately one year and nine months later, defendant contacted plaintiff's employee, Mark Graves, with whom defendant had previously worked, and had lunch with him. During the lunch defendant indicated that his current employer, Lopata Flegel, was looking for an accountant with Graves's type of experience and that it would be a good opportunity for him.

Graves approached his supervisor and told him that he had talked to defendant about an opportunity at Lopata Flegel. Graves indicated that he planned to stay with plaintiff, but did not ask for a raise. Plaintiff did not give Graves a raise or promise Graves any additional compensa-

tion for staying in plaintiff's employ. Lopata Flegel never made a job offer to Graves.

Plaintiff subsequently filed a lawsuit against defendant seeking liquidated and actual damages for breach of the non-solicitation agreement. At trial James Schmersahl, plaintiff's president, testified that the covenant was to keep former employees, who had developed a bond with co-workers as a result of plaintiff's efforts to create camaraderie among employees, from using that relationship to entice the former co-workers to either leave plaintiff's employ or to question whether plaintiff was compensating them sufficiently. He opined that plaintiff would give Graves bigger raises in the future because of Graves's knowledge of the market for his services as a result of the solicitation, but admitted that, as of the time of trial, plaintiff had not given Graves any additional compensation.

The trial court entered judgment for the defendant on the grounds that the covenant sought to be enforced was a restrictive covenant which was broader than was needed to protect client needs and identities and extended to interests which were not properly the subject of a covenant not to compete. It further held that the liquidated damage clause was not a reasonable forecast of the harm caused by the breach but purported to award damages even in situations in which the employer was not entitled to damages and was in the nature of a penalty.

In its four points on appeal, plaintiff contends that the trial court misapplied and misdeclared the law in entering judgment against it. It first argues that its non-solicitation of employees clause is not a restrictive covenant. It next argues that, even if it is a restrictive covenant, it should be upheld because it protects a legitimate business interest, it was reasonable as to time, and the damages were a reasonable forecast of the harm caused by the breach.

## DISCUSSION

### I. Enforceability of the Non–Solicitation of Employees Clause

#### A. Is the Non–Solicitation Clause a Restrictive Covenant?

The threshold question is whether a former employee's covenant not to solicit or encourage other employees to terminate their employment is a restrictive covenant. No Missouri court has determined this issue. In *Universal Underwriters Ins. Co. v. Lyon*, 896 S.W.2d 762 (Mo.App.1995), the contract contained a covenant by which an ex-employee agreed not to "employ" any other employee of employer for two years after termination. The court affirmed the judgment in defendant's favor on the grounds that there was no evidence that the ex-employee had "employed" one of employer's employees and did not reach the question of whether the employer had a protectable interest in its workforce. *Id.* at 764.

Because Missouri courts have not addressed this issue, we must look at the underlying principles governing agreements which restrain trade to determine if this kind of non-solicitation agreement falls thereunder. Contracts in restraint of trade are unlawful in Missouri. Section 416.031 RSMo (1994). "A promise is in restraint of trade if its performance would limit competition in any business or restrict the promisor in the exercise of a gainful occupation." RESTATEMENT (SECOND) OF CONTRACTS Section 186(2) (1981). "Every promise that relates to a business dealing or to a professional or other gainful occupation operates as a restraint in the sense that it restricts the promisor's future activity." *Id.*, cmt. a. Restrictive covenants limiting individuals in the exercise or pursuit of their occupations are in restraint of trade. *Sturgis Equip. Co., Inc. v. Falcon Indus. Sales Co.*, 930 S.W.2d 14, 16 (Mo.App.1996). Post-employment restrictions are generally considered restraints of trade. *House of Tools &*

*Engineering, Inc. v. Price*, 504 S.W.2d 157, 159 (Mo.App.1973).

Competition in the marketplace encompasses competition in the labor market, including an employer's ability to solicit and hire the at-will employees of another and an at-will employee's ability to seek employment at better terms. The policy in favor of free competition allows an employer to make an offer of employment to a competitor's at-will employee and allows an at-will employee to leave employment and compete with a former employer. *Dwyer, Costello and Knox, P.C. v. Diak*, 846 S.W.2d 742, 747 (Mo.App.1993). In *Triangle Film Corp. v. Artcraft Pictures Corp.*, 250 F. 981 (2d Cir.1918), Judge Learned Hand wrote that it was universally accepted that, absent some monopolistic purpose, everyone has the right to offer better terms to another's employee, as long as the latter is free to leave. *Id.* at 982. He concluded that a contrary result would be "intolerable" both to other employers who could use the employee more effectively and to the employees who might receive added pay. *Id.* To hold otherwise would "put an end to any kind of competition." *Id.* The argument "[t]hat nobody in his own business may offer better terms to an employe[e], himself free to leave, is so extraordinary a doctrine, that we do not feel called upon to consider it at large." *Id.* at 983.

Having considered these principles, we conclude that this covenant is in restraint of trade. It can be used to restrict the employee's post-employment ability to solicit employees for himself, his new employer, or anyone else. It restricts the flow of competitive information about the labor market, including the availability of opportunities and offers of employment to an employer's at-will workforce. It thus has the effect of reducing competition in the labor market.

B. *Does It Protect Trade Secrets or Customer Contacts?*

■ A restrictive covenant in an employment agreement is only valid and enforceable if it is necessary to protect one of two well-defined interests, trade secrets and customer contacts, and if it is reasonable as to time and place. *Easy Returns Midwest, Inc. v. Schultz*, 964 S.W.2d 450, 453 (Mo.App.1998). Plaintiff challenges the trial court's finding that the non-solicitation agreement was unenforceable because it did not seek to protect trade secrets or customer contacts. We agree with the trial court.

■ "[A]n employer may only 'fairly require' the protection of certain narrowly defined and well recognized interests against possible appropriation by a former employee. These protectable interests are limited to trade secrets and customer contacts, the latter being essentially the influence an employee acquires over his employer's customers through personal contact." *Continental Research Corp. v. Scholz*, 595 S.W.2d 396, 400 (Mo.App. 1980).

In *Renwood Food Products v. Schaefer*, 240 Mo.App. 939, 223 S.W.2d 144 (1949), the court adopted the rationale for this rule from an English case:

> Lord Atkinson, in *Herbert Morris, Ltd. v. Saxelby*, [1916, 1 A.C. 688] 702, summarized the modern rule as follows: 'He (employer) is undoubtedly entitled to have his interest in his trade secrets protected, such as secret processes of manufacture which may be of vast value. And that protection may be secured by restraining the employee from divulging these secrets or putting them to his own use. He is also entitled not to have his old customers by solicitation or such other means enticed away from him. But freedom from all competition per se apart from both these things, however lucrative it might be to him, he is not to be protected against. He must be prepared to encounter that even at the hands of a former employee.'

*Id.* at 151.

Missouri courts continue to follow *Renwood* and *Continental Research* and limit

the interests which may be protected by a restrictive covenant to trade secrets and customer contacts. *See Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 73–75 (Mo. banc 1985); *Easy Returns*, 964 S.W.2d at 453; *West Group Broadcasting, Ltd. v. Bell*, 942 S.W.2d 934, 937 (Mo.App.1997).

On its face this covenant does not protect trade secrets or customer contacts. Plaintiff seeks to extend an employer's protectable interests to its interest in maintaining a stable workforce. It argues that it is necessary to protect the employer from the use of the employee's "influence" with former co-workers to unfairly compete with the employer. We disagree. The rationale for protecting trade secrets and customer contacts does not extend to protecting an employer's interest in keeping at-will employees from leaving their employment.

The purpose of the restrictive covenant is to protect an employer from unfair competition. *Continental Research*, 595 S.W.2d at 400. With respect to its employees, an employer has a proprietary right in its stock of customers and their goodwill which can be protected in a reasonable covenant not to compete. *Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo.App. 1997).

> The employee's relationship with the client he owes to the employer, and he holds it in a kind of fiduciary capacity for the employer. *Mills v. Murray*, 472 S.W.2d 6, 12 (Mo.App.1971). It is perfectly fair, for a limited time after the termination of the employment, to prohibit his using that relationship for his own benefit, and for the benefit of a competitor of the employer, to the employer's detriment.

*Property Tax Representatives, Inc. v. Chatam*, 891 S.W.2d 153, 158 (Mo.App.1995). Further, an employer's trade secrets are likewise proprietary and can be protected where they have been disclosed to the employee in confidence under circumstances giving rise to a fiduciary relationship. *National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 35–36 (Mo. banc 1966); *Pony Computer, Inc. v. Equus Computer Systems of Missouri, Inc.*, 162 F.3d 991, 997–98 (8 th Cir.1998) (applying Missouri Law). Because an employer's interests in customer contacts and trade secrets are proprietary, the courts will, in appropriate circumstances, protect them against unfair competition.

However, an employer does not have a proprietary interest in its employees at will or in their skills. In *Triangle Film* the court rejected the argument that an employer's reasonable expectation that his employees at will will stay with him is part of "goodwill" and is protectable. 250 F. at 982. The normal skills of a trade are not included in an employer's protectable interest. Thus, the basic skill of a craftsman will not support a restrictive covenant. *Osage Glass*, 693 S.W.2d at 74. An employer cannot prevent or inhibit its former employees from using the normal skills of their trade. Restatement (Second) of Contracts Section 188, cmt. b. The fact of an employer-employee relationship, standing alone, is not sufficient to cause a confidential relationship to exist as to knowledge which is the natural product of the employment. *National Rejectors*, 409 S.W.2d at 35. It is a well-established principle that:

> "[A]n employee after leaving the service of an employer may carry on the same business on his own and use for his own benefits the things he had learned while in the earlier employment. If this were not so an apprentice who has worked up through the stages of journeyman and master workman could never become an entrepreneur on his own behalf. Any such system of quasi-serfdom has long since passed away. Necessarily the former employee may use what he learned in the former employer's business while engaged in business for himself or some business competing with the former employer."

*Id.* at 41 (quoting *Midland–Ross Corp. v. Yokana*, 293 F.2d 411, 412–13 (3rd Cir. 1961)).

 Further, soliciting another's at-will employees does not constitute unfair competition. There is no wrong in making an offer of employment to an at-will employee, even though the employee and his new employer may compete with the former employer. *Dwyer*, 846 S.W.2d at 747. The law's policy favors free competition when no agreement provides otherwise. *Id.* at 747–48.

> The employees of the firm, whether CPAs or not, were as free as the defendant to leave the plaintiff corporation's employ and to enter into competition. They could do so in association with the defendant, and the defendant could advise them of his decision to leave the plaintiff. If the plaintiff sensed the need to protect itself against competition from its accounting employees, it could have sought covenants restricting their competition, for which it would presumably have to offer some consideration.

*Id.* at 748.

 The conduct only becomes culpable where it is done for a wrongful purpose, such as to destroy another's business, to misappropriate the employer's trade secrets, *National Rejectors*, 409 S.W.2d at 34, to induce breach of a covenant not to compete, *Mills v. Murray*, 472 S.W.2d 6, 13 (Mo.App.1971). *See* RESTATEMENT (SECOND) OF TORTS, Section 768(1) (1979).

 The employer can protect itself against competition from its remaining employees by entering into restrictive agreements with those employees to prohibit the solicitation of clients or the disclosure of trade secrets. *Dwyer*, 846 S.W.2d at 748. However, an employer's interest in protecting the stability of its at-will workforce is not one of the interests which may be protected by a restrictive covenant in Missouri. Accordingly the non-solicitation of employees clause is not enforceable.

Because the covenant does not seek to protect trade secrets or customer contacts,

and is therefore not enforceable on this ground, we do not reach the question of whether it is reasonable as to time or place.

## II. *Enforceability of Liquidated Damages Clause*

In its petition plaintiff sought liquidated damages pursuant to the contract and, in the alternative, actual damages. The trial court found the liquidated damages clause to be an unenforceable penalty because it purported to apply to a situation in which the employer would not be entitled to actual damages. *See Strouse v. Starbuck*, 987 S.W.2d 827, 829 (Mo.App.1999); *Paragon Group, Inc. v. Ampleman*, 878 S.W.2d 878, 881 (Mo.App.1994). Plaintiff also challenges this finding on appeal. Because of our holding that the non-solicitation clause is not enforceable, we do not reach this issue.

For all the above reasons, points one through four are denied. The judgment of the trial court is affirmed.

ROBERT G. DOWD, Jr., J. and SHERRI B. SULLIVAN, J., concur.