*428 OPINION OF THE COURT
Kenneth R. Fisher, J.
This matter is before the court following a motion for summary judgment filed by plaintiff and a cross motion for summary judgment filed by defendant. Oral argument was held on July 6, 2005, and the court ruled at that time that plaintiffs motion for summary judgment was denied. Further, it was held that the portion of defendant’s cross motion which was for dismissal of plaintiffs cause of action grounded in unjust enrichment was granted. The court reserved decision on the remainder of defendant’s cross motion, and that will be addressed at this time.
Facts and Procedural Background
According to its own description as contained in the complaint, plaintiff is a corporation which “has provided businesses with various digital services used in the production of marketing and packaging materials, including imaging, design and mechanical layout, electronic prepress, and catalog and packaging development” (complaint 1Í 3). Defendant was an employee of plaintiff who left its employ in July 2004, and began working for Jay Advertising immediately thereafter. According to the affidavit of Greg Smith, the president of Jay, Jay is an advertising and marketing company which conducts advertising, planning, research, promotions, media and public relations. These descriptions of the two companies have not been contested by either of the parties.
Defendant was required to execute an employment agreement on May 31, 2000. It contained, inter aha, restrictive covenants. One, found in paragraph 5.4, was a covenant not to compete. It consisted of general language in which defendant, for the period of one year following termination of employment with plaintiff, agreed not to compete with plaintiff, nor solicit any customers of plaintiff, and not to work for a competitor. A second restrictive covenant was found in an entirely different paragraph. Paragraph 5.6 provided that, during the one-year postemployment period, defendant “shall not hire any employee of the [plaintiff] or solicit any employee of the [plaintiff] to leave the employment of the [plaintiff] for any purpose.” When defendant’s initial term of employment was nearing an end, plaintiff sent defendant a letter in which plaintiff indicated that it wished to retain defendant as an employee, and made several amendments to the May 31, 2000 agreement. Among those revisions, *429 plaintiff wrote that paragraph 5.8 was deleted in its entirety. Neither party contests that defendant was employed under the terms of the May 31, 2001 amendments to the May 31, 2000 agreement.
Plaintiff filed suit against defendant alleging damages as the result of defendant’s alleged solicitation of one of plaintiffs employees, Marianne Warfle. Plaintiff has asserted that defendant actively participated in the hiring of Warfle by Jay to such an extent that defendant violated her restrictive covenant not to solicit plaintiff’s employees. Defendant, in response, has contended that she did nothing affirmative to seek out Warfle, that Warfle merely responded to a blind ad for an open position which turned out to be with Jay, and upon learning that Warfle had applied for the open position, informed both her and Jay that she could not actively assist in the potential hiring process of Warfle in deference to the restrictive covenant which she had executed with plaintiff. The parties’ submissions on these motions focus primarily on this factual dispute. But defendant’s cross motion may be resolved in her favor without a trial of that discrete factual issue.
Discussion and Analysis
The nonrecruitment provision at issue appears in article 5 of the agreement entitled “Covenants by Employee.” The first three paragraphs of article 5 concern confidential information. Paragraph 5.4 is a covenant not to compete. Paragraph 5.5 is a nonsolicitation of customers provision. Paragraph 5.6, the one at issue here, is a nonrecruitment provision which reads, in its entirety, “During the non-competition period, the employee shall not hire any employee of the company or solicit any employee of the company to leave the employment of the company for any purpose.” As I indicated at oral argument, two issues immediately present themselves by defendant’s cross motion. First, can the nonrecruitment provision be read as a standalone covenant, without regard to and not tied to the noncom-petition provisions? Second, if it can be read as a stand-alone provision, is it enforceable in this state? Both the structure of article 5 of the agreement and the first clause of paragraph 5.6 compel a reading of the paragraph 5.6 covenant as erecting a nonrecruitment duty only in conjunction with the nondisclosure of propriety information provisions (HIT 5.1, 5.2, 5.3) and the noncompetition provisions (HH 5.4, 5.5 and, as I find here, 1T 5.6). The first clause of paragraph 5.6 (“Muring the non-competition *430 period”) makes the tie-in explicit, thus signaling the intention of the parties to make the nonrecruitment duty applicable only in a case in which a competitor is involved or the protection of confidential or proprietary information is at stake.
Even assuming, however, that the nonrecruitment provision may be read as a stand-alone provision, having application to noncompetitors in a case in which the former employer fails to establish that protection of confidential information is at stake, such a provision would be held unenforceable in New York. The Court of Appeals has not considered whether a covenant not to recruit is enforceable in this state. The federal courts cite Veraldi v American Analytical Labs. (271 AD2d 599 [2d Dept 2000]), however, as authority for the proposition that “New York recognizes the enforceability of covenants not to solicit employees.” (Global Telesystems, Inc. v KPNQwest, N.V., 151 F Supp 2d 478, 482 [SD NY 2001]; see also, Automated Concepts Inc. v Weaver, 2000 WL 1134541, 2000 US Dist LEXIS 11560 [ND Ill 2000].)
Veraldi is indeed the only New York case I have been able to find treating a covenant not to solicit employees. The case involved a counterclaim asserting that the former employee solicited the employer’s customers and employees, both of which were covered by restrictive covenants. The Court upheld the trial court’s refusal to dismiss the counterclaims, observing that “the restrictive covenant does not violate public policy and, therefore, is enforceable.” (Veraldi, 271 AD2d at 600.) In support of this conclusion the Court cited Slomin’s Inc. v Gray (176 AD2d 934, 935 [2d Dept 1991]), which was a sale of business case not involving a covenant prohibiting solicitation of former coemployees. (See id.) The Court’s cryptic statement that the covenant “does not violate public policy” did not reveal whether the covenant was tested under the concept of reasonableness applicable to restraints on competition (as a species of restraints on trade) (Restatement [Second] of Contracts § 188; BDO Seidman v Hirshberg, 93 NY2d 382, 388-389 [1999] [three-prong test]), or the rule of reason test applicable to covenants in restraint of trade generally (Restatement [Second] of Contracts § 187), or some other test.
I assume that, because the particular kind or type of restraint that is involved here is a postemployment restraint on the conduct of an employee, the covenant should be analyzed according to the three-pronged reasonableness formula of EDO Seidman and section 188 of the Restatement (Second) of *431 Contracts. (See generally, Blake, Employee Agreements Not To Compete, 73 Harv L Rev 625, 646 [1960] [tracing “the divorce of the law of employee restraints from its rather unnatural marriage with the doctrines governing restraints of other types”].) The New York cases, although invariably dealing with postemployment covenants not to compete, speak of the “overriding requirement of reasonableness” as applying to “negative covenants” or “restrictive covenants” directed at employee conduct generally, with “the formulation of reasonableness . . . varying] with the context and type of restriction imposed” (Reed, Roberts Assoc. v Strauman, 40 NY2d 303, 307 [1976]). But an agreement of the kind found here, restricting as it does a former employee’s freedom to solicit his former coemployees, necessarily also affects “the general competitive mold of society” (American Broadcasting Cos. v Wolf, 52 NY2d 394, 404 [1981]), and is in derogation of the concept, invoked in the cases on this subject, that “our economy is premised on the competition engendered by the uninhibited flow of services, talent and ideas.” (Reed, Roberts Assoc. v Strauman, 40 NY2d at 307.) Accordingly, a covenant not to solicit former coemployees is a species, albeit a limited one, of a covenant not to compete in the broad sense and is governed by the three-part test of reasonableness articulated in BDO Seidman and section 188 of the Restatement (Second) of Contracts.
To be sure, such a covenant does not affect in the same way the “powerful considerations of public policy which militate against sanctioning the loss of a man’s livelihood” (Purchasing Assoc. v Weitz, 13 NY2d 267, 272). That factor, however, does not take such a covenant out of the class of anticompetitive employee covenants subject to reasonableness scrutiny generally applicable to noncompete agreements, because as stated above it is only “the formulation of reasonableness [that] may vary with the context and type of restriction imposed.” (Reed, Roberts Assoc. v Strauman, 40 NY2d at 307.) This is confirmed by the citation in BDO Seidman (93 NY2d at 389) of Technical Aid Corp. v Allen (134 NH 1, 591 A2d 262 [1991]), which upheld on its facts a covenant not to solicit the former employer’s employees. (134 NH at 13-14, 591 A2d at 269.) The court agreed that “[s]uch a prohibition certainly may have some impact on . . . [the former employee]’s employment” (134 NH at 15, 591 A2d at 270), and therefore it is appropriate to analyze *432 paragraph 5.6 under the three-pronged test of reasonableness of BDO Seidman, or some variant thereof.[1]
Generally, a restrictive covenant in an employment agreement “is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public.” (BDO Seidman, 93 NY2d at 388-389.) “A violation of any prong renders the covenant invalid.” (Id., 93 NY2d at 389.) As stated above, however, the reasonableness test “may vary” depending upon the type of restriction involved and the circumstances. The precise formulation of the reasonableness test for a covenant of this nature should be left to the Court of Appeals, as the exclusive policy-making arm of the state judiciary. But it has been held that the reasonableness inquiry may be avoided altogether when the court finds that application of a particular restrictive covenant will not serve any legitimate employer interest. (American Inst. of Chem. Engrs. v Reber-Friel Co., 682 F2d 382, 387 [2d Cir 1982] [“we need not reach the questions of reasonableness of the scope of the covenant because legitimate interests of the employer are not implicated”].) True, this is a federal case, but the clear message of BDO Seidman was the same: enforcement of a covenant restricting employee competition will be upheld only to the extent it serves a legitimate interest of the employer to avoid unfair competition. (BDO Seidman, 93 NY2d at 391-393 [drawing a sharp distinction between the concept of unfair competi *433 tion and the illegitimate purpose of avoiding competition in a general sense].)[2]
Here, defendant establishes as a matter of law that enforcement of the nonrecruit provision of the agreement will not serve any legitimate employer interest in the circumstances, and plaintiff fails to raise an issue of fact on the matter. It is not alleged that the employee allegedly recruited possesses any confidential or proprietary information of the plaintiff, nor is it alleged that she was in any position to acquire trade secrets. Plaintiff does not present any admissible evidence that she was a particularly valuable or unique employee, or provided services to plaintiff which cannot easily be replaced. (Ken J. Pezrow Corp. v Seifert, 197 AD2d 856 [4th Dept 1993]; ABC Mobile Brakes, Div. of D.A. Mote, Inc. v Leyland, 84 AD2d 914 [4th Dept 1981].) Most important, plaintiff fails to raise an issue of fact that Jay Advertising and it are competitors in any sense of the word other than that any two employers would like the services of a good employee. To the extent that interest is affected by the alleged recruitment here, it is not one of those interests which permit enforcement of a restrictive covenant in this state. (See Labriola v Pullard Group, Inc., 152 Wash 2d 828, 847, 110 P3d 791, 800 [2004] [holding unenforceable a restraint “designed to stabilize a company’s current workforce”]; Schmersahl, Treloar & Co., P.C. v McHugh, 28 SW3d 345, 350 [Mo Ct App ED 2000] [“rationale for protecting trade secrets and customer contacts does not extend to protecting an employer’s interest in keeping at-will employees from leaving their employment”]; cf., National Empl. Serv. Corp. v Olsten Staffing Serv., Inc., 145 NH 158, 161, 761 A2d 401, 405 [2000] [“although there may be valid reasons to restrictive covenants, the mere cost associated with recruiting and hiring employees is not a legitimate interest protectable by a restrictive covenant in an employment contract”]; cf., Lockheed Martin Corp. v Aatlas Commerce Inc., 283 AD2d 801, 803 [3d Dept 2001]; Headquarters Buick-Nissan v Michael Oldsmobile, 149 AD2d 302, 304 [1st Dept 1989] [“(n)or is the mere inducement of an at-will employee to join a competitor actionable, unless dishonest means are employed, or the solicitation is part of a scheme *434 designed to produce damage”].) Accordingly, defendant establishes as a matter of law that, in these circumstances involving no competition, and no confidential or proprietary information at stake, no legitimate interest of the employer is served by the covenant, and plaintiff raises no issue of fact warranting a trial.
Conclusion
Defendant’s cross motion for summary judgment is granted. (Giuffrida v Citibank Corp., 100 NY2d 72 [2003]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986].)

. There is authority to the contrary elsewhere. (Smith, Barney, Harris Upham & Co., Inc. v Robinson, 12 F3d 515, 519 [5th Cir 1994] [“narrowly tailored covenant not to solicit employees of the employer is not among the kinds of agreements covered by the (Louisiana) statute”]; Beasley v Hub City Texas, L.P., 2003 WL 22254692, *2 n 3, 2003 Tex App LEXIS 8550, *5 n 3 [Ct App 2003] [“ ‘nonrecruitment covenants ... do not necessarily restrict a former employee’s ability to compete with his or her former employer and, like nondisclosure covenants, should not significantly restrain trade’ ”], quoting Totino v Alexander & Assoc., Inc., 1998 WL 552818, *9, 1998 Tex App LEXIS 5295, *32 [Ct App 1998]; compare YCA, LLC v Berg, 2004 WL 1093385, *17-18, 2004 US Dist LEXIS 8129, *47-51 [ND Ill 2004], with Unisource Worldwide, Inc. v Carrara, 244 F Supp 2d 977, 983 [CD Ill 2003], for varying approaches to Illinois law.) The problem with these cases, however, is that they completely remove the matter from any reasonableness analysis while the approach taken in the text above factors the more benign nature of the restrictive covenant into the common-law reasonableness analysis. For the reasons stated above, I believe the Court of Appeals cases on restrictive employment covenants require this, as Veraldi seemed to recognize.

. This is just another way of saying that a failure to meet the first prong of the tripartite common-law standard (restraint must be “no greater than is required for the protection of the legitimate interest of the employer”) (BDO Seidman, 93 NY2d at 388) obviates the need to consider the other two prongs of the test.