Mary Anastasia NAEGELE, Appellant,

v.

**BIOMEDICAL SYSTEMS
CORPORATION,**
Respondent.

No. ED 90584.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 28, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 9, 2008.

Application for Transfer Denied
Jan. 27, 2009.

Robert J. Tomaso, Geoffrey Gerber, Saint Louis, MO, for Appellant.

Douglas W. King, Mark B. Leadlove, Kimberly A. Mohr, Saint Louis, MO, for Respondent.

## OPINION

GLENN A. NORTON, Judge.

Mary Anastasia Naegele appeals the judgment dismissing her petition for declaratory judgment and granting Biomedical Systems Corporation's counterclaim for a permanent injunction. We affirm in part and reverse in part.[1]

## I. BACKGROUND

Naegele worked for Matria Health Care for twelve years, providing monitoring services to obstetric physicians specializing in managing high risk pregnancies. While working for Matria, Naegele accepted an offer from the Vice–President of Biomedical, Patrick Barrett, to become Biomedical's national director of sales for the company's Women's Health Services division.

Naegele began her position at Biomedical on June 30, 2004, despite the fact that she had previously entered into a covenant not to compete with Matria. Naegele filed a petition against Matria seeking a judicial declaration that the Matria covenant not to compete was unenforceable. Ultimately, the lawsuit was settled and Naegele began marketing Biomedical products and services to physicians in the territory previously restricted by the Matria covenant not to compete.

On January 10, 2006, Naegele entered into the Biomedical Systems Corporation Confidentiality, Nondisclosure and Non-competition Agreement (the "Biomedical noncompete"). Under Paragraph 2 of the Biomedical noncompete, Naegele agreed to "keep secret and confidential ... any proprietary and/or confidential information acquired during the course of [her] employment, including any such information relating to any ... customers [and] customer lists...." Naegele also agreed to be bound by certain post-termination restrictions for a period of two years following her termination. Specifically, under Paragraph 3 of the Biomedical noncompete, Naegele agreed that she would not directly or indirectly:

> (a) provide Competitive Goods or Services ... to any person, firm, corporation or entity that was a customer, at any time during the one-year period immediately preceding my termination of employment with the Company,[2] or any division or subsidiary or other affiliated or related entity of the Company in or for which I worked during that one-year period;
>
> (b) cause or attempt to cause any person, firm, corporation or entity that was a customer, at any time during the one-year period immediately preceding my termination of employment with the

---

1. Biomedical's motion for award of attorneys' fees and expenses on appeal, which was taken with the case, is denied.

2. Throughout the Biomedical noncompete, Biomedical is referred to as "the Company."

Company, or any division or subsidiary or other affiliated or related entity of the Company in or for which I worked during that one year period, to divert, terminate, limit or in any manner modify or fail to enter into, any actual or potential business relationship or opportunity with the Company;

(c) cause or attempt to cause any customer or prospective customer of the Company with whom I or anyone under my supervision dealt, or regarding whom I was provided or had access to any confidential information, at any time during my last one year of employment with the Company, to divert, terminate, limit or in any manner modify or fail to enter into, any actual or potential business relationship with the Company; or

(d) solicit, entice, hire, employ or seek to employ any employee of the Company, who was employed by the Company at any time during my last one year of employment with the Company, to provide any Competitive Goods or Services.

The Biomedical noncompete set forth Biomedical's right to seek injunctive relief enforcing the restrictions contained therein and also provided that, upon any breach or threatened breach thereof, Biomedical could seek to recover attorneys' fees and costs incurred in enforcing its rights thereunder.

On August 1, 2006, Naegele informed Barrett that she would be leaving Biomedical and returning to Matria. Naegele immediately filed a petition for declaratory judgment, but continued to work for Biomedical for two weeks, during which time she continued to go on sales calls. At some point during this two week period, Biomedical filed a counterclaim seeking an injunction and attorneys' fees and costs.

The parties entered into a consent temporary restraining order in which Naegele agreed to abide by the terms of the Biomedical noncompete. The parties engaged in expedited discovery and a three-day hearing was held beginning on August 21, 2006. Based on evidence heard at the hearing, the court issued a preliminary injunction enforcing the terms of the Biomedical noncompete. The parties thereafter engaged in additional discovery, during which several discovery disputes arose.

A bench trial was held on March 14, 2007. Over Naegele's objection, the trial court admitted evidence related to Dan Ketcherside, a former Biomedical employee hired by Matria, who allegedly provided Matria employees with access to Biomedical's confidential information. The evidence showed that during Naegele's initial employment with Matria, Naegele was told that she could access certain Biomedical confidential information obtained by Ketcherside, including patient census data and information regarding Biomedical's relationships with certain insurers.

The evidence also showed that, as Vice–President for Matria's Mid–Atlantic region, Naegele's new job would include contact with some of the same customers that she provided services to while working for Biomedical, and that her current job description is "much like" what she did for Biomedical. Nevertheless, when asked by Barrett how she intended to perform her responsibilities at Matria in light of the Biomedical noncompete, she stated that "it was not going to be a problem" because "it is not going to restrict me in what I need to do." Naegele also testified that she told Barrett that the Biomedical noncompete was not going to be an issue because, "I knew I was not going to violate it. I was going to seek the Court's order on what I could and couldn't do because I knew there was a gray area." In fact, Matria told Naegele she could not work until they had an opinion of the court outlining what she

could and could not do. Matria knew they would have to adjust Naegele's territory if the "noncompete had any kind of affect on it," and therefore Naegele's territory was determined after the court issued the preliminary injunction. The states in Naegele's region were ultimately chosen "because they did not have a customer in which [she] had dealings with in [her] last year at Biomedical."

Naegele testified that "Matria has made it very clear to me that I am in no uncertain terms to breach that agreement or attempt to breach that agreement." When asked whether she had attempted to divert any customers of Biomedical, Naegele responded, "absolutely not." In fact, when asked whether he had any evidence that Naegele had disclosed confidential information about Biomedical to anyone at Matria, Barrett responded, "I don't have any evidence of that, no.... I cannot tell you I have evidence to date that she did anything specifically to violate the agreement."

Following the trial, the court issued an order granting a permanent injunction prohibiting Naegele from directly or indirectly "using or disclosing to any third parties ... any proprietary and/or confidential information acquired during the course of Naegele's employment with Biomedical." The court further enjoined Naegele from serving any customers who were customers or prospective customers of Biomedical in the year preceding her termination, including those customers that Naegele brought with her from Matria, until August 15, 2008. The trial court found that a permanent injunction "was appropriate as monetary damages will not adequately compensate Biomedical for the harm which would result if Naegele were allowed to breach her obligations under the [Biomedical noncompete]."

In addition, the trial court entered an order granting Biomedical's motion to recover its attorneys' fees and costs. The trial court found that Biomedical was entitled to recover its fees and costs from Naegele because her employment at Matria constituted a threatened breach of the Biomedical noncompete, which forced Biomedical to file its counterclaim. The trial court ordered Naegele to pay Biomedical's fees and costs in the amount of $313,062.09. Naegele appeals.

## II. DISCUSSION

### A. Standard of Review

We review the trial court's judgment pursuant to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Sheppard v. East*, 192 S.W.3d 518, 522 (Mo.App. E.D.2006).

### B. Biomedical had a Legitimate Interest in Protecting its Customer Contacts, Including those Customers that Naegele Originally Developed a Relationship with While at Matria

█ In her first point on appeal, Naegele argues that the trial court erred in entering a permanent injunction enforcing the terms of the Biomedical noncompete. In support of her claim, Naegele first argues that Biomedical had no protectable interest in "preexisting customers" that she initially developed a relationship with when she worked at Matria because they were not "contributed as part of an equity investment in a business venture" and "Biomedical did not assist in developing

these contacts." Second, Naegele argues that Biomedical failed to establish that its confidential customer-related information and marketing plans were trade secrets.

■ A covenant not to compete containing limited restraints on a former employee's ability to compete with a former employer is enforceable if reasonable and if enforcement serves the employer's legitimate interests. *AEE–EMF, Inc. v. Passmore*, 906 S.W.2d 714, 719 (Mo.App. W.D. 1995). In Missouri, the courts have identified two protectable interests of employers: customer contacts and trade secrets. *Schmersahl, Treloar & Co. v. McHugh*, 28 S.W.3d 345, 349 (Mo.App. E.D.2000). Courts have recognized customer contacts to be protectable interests for the fundamental reason that:

> goodwill develops between the customers and the company through employees or business partners whose job it is to meet with, converse with, and develop a professional relationship with the company's customers while representing the company. The goodwill that develops from customer contacts between the salesman or business partner and the company's customer is essential to the companies [sic] success and is the reason the employee or the business partner is remunerated.

*AEE–EMF, Inc.*, 906 S.W.2d at 720. Thus, customer relationships are pursued and developed at the employer's expense, and add value to the employer's business. This is true regardless of whether the customer contact originated with the employer or the employee.

■ Therefore, an employer may protect customer relationships even if the employee had contact with some of the same customers before joining the employer. *See Emerson Electric Co. v. Rogers*, 418 F.3d 841, 844–45 (8th Cir.2005) (holding that employer had an interest in protecting its relationships with customers to whom employee sold products prior to his relationship with employer). The fact that Biomedical did not purchase the customer contacts at issue as part of an equity investment in a business venture is immaterial. As Naegele's employer, Biomedical had the right to require Naegele to develop strong relationships with any and all customers that she could. The evidence in the record showed that Biomedical invested considerable money, time, and effort to allow Naegele to develop, maintain, foster and preserve Biomedical's relationships with its customers, including the customers Naegele originally met during her Matria employment. Biomedical had a legitimate business interest in restraining Naegele from pursuing those customers with whom she developed or strengthened a relationship while working for Biomedical, regardless of whether those customer contacts originated with Naegele while she was working at Matria. *See id.*

Accordingly, we find that the trial court did not err in finding that Biomedical had a protectable interest in customers that Naegele developed a relationship with during her first twelve years at Matria and then brought with her to Biomedical. Having found that Biomedical had a protectable interest in these preexisting customer contacts, it is unnecessary for us to address Naegele's argument that Biomedical failed to prove that its customer lists were trade secrets. *See Schmersahl, Treloar & Co.*, 28 S.W.3d at 349 (a covenant not to compete may protect *either* customer contacts *or* trade secrets). Point one is denied.

## C. The Trial Court did not Err in Admitting Evidence Related to the Conduct of Dan Ketcherside

■ In her second point on appeal, Naegele claims that the trial court erred in

overruling her objection to evidence related to the conduct of Dan Ketcherside, a former Biomedical employee who left Biomedical to work for Matria. The evidence showed that during Naegele's initial employment with Matria, Naegele was told that she could access Biomedical confidential information allegedly obtained by Ketcherside, including patient census data and information regarding Biomedical's relationships with certain insurers. Naegele's point relied on claims that the trial court erred in allowing such evidence because it was immaterial, not probative, incompetent hearsay and speculative. Despite, however, the claims in her point relied on, Naegele's analysis argues solely that the evidence related to the conduct of Ketcherside was irrelevant and overly prejudicial. Naegele argues, *inter alia*, that the evidence regarding how Ketcherside treated confidential Biomedical information is irrelevant because it does not help to predict how she would treat such information.

We find no reversible error in the trial court's decision to allow the introduction of evidence related to the conduct of Ketcherside. The evidence in question was offered to show the misconduct of Matria management, specifically Matria's instructions to employees, including Naegele, to use confidential Biomedical information acquired by Ketcherside. This is clearly relevant to Biomedical's request for injunctive relief as it supports Biomedical's claim that it was subject to irreparable harm and exposed to substantial risk if Naegele were permitted to avoid the terms of the Biomedical noncompete and work for Matria with no restrictions. *See A.B. Chance Co. v. Schmidt,* 719 S.W.2d 854, 859 (Mo. App. W.D.1986) (injunctive relief is proper where irreparable harm is likely to result and there is no adequate remedy at law). We note that "[i]t is nearly impossible in a court-tried case to predicate reversal on

the erroneous admission of evidence," *In the Interest of T.B.,* 963 S.W.2d 252, 257 (Mo.App. W.D.1997) (internal quotations omitted), and we find no error here. Point two is denied.

### D. The Trial Court Erred in Granting Biomedical's Request for Attorneys' Fees and Costs

■ In her third point on appeal, Naegele argues that the trial court erred in granting Biomedical's request for attorneys' fees and costs. We agree.

Under paragraph 11 of the Biomedical noncompete, Naegele agreed that, upon a breach or threatened breach, she "shall be liable for any attorneys' fees and costs incurred by [Biomedical] in enforcing its rights hereunder." Naegele argues that because Biomedical did not establish the requisite breach or threatened breach, it should not be entitled to an award of attorneys' fees and costs.

The trial court found that Naegele threatened to breach the Biomedical noncompete by accepting employment as Matria's Regional Vice–President for the Mid–Atlantic region. However, in determining whether the award of attorneys' fees and costs was in error, a distinction needs to be made between (1) the threat that Naegele's move to Matria had on Biomedical's business, and (2) whether Naegele actually breached or threatened to breach the terms of the Biomedical noncompete. We find that Naegele's acceptance of employment with Matria, alone, does not constitute a breach or threatened breach of the Biomedical noncompete. We recognize that the evidence in the record supports a finding that Naegele's acceptance of Matria's offer of employment was potentially threatening to Biomedical's business. This is often the case when an employee leaves its current employer to accept a similar

position with a competing business. Nevertheless, such a potential threat, without a showing of actual breach or threatened breach of the specific terms of the Biomedical noncompete, is not sufficient grounds for awarding attorneys' fees.

We fail to find sufficient competent evidence in the record to support the court's finding that Naegele threatened to breach the Biomedical noncompete. In fact, the record before this Court refutes the trial court's finding. The evidence did show that, as Vice–President for the Mid–Atlantic region, Naegele's new job description at Matria is "much like" what she did for Biomedical and contemplates contact with some of the same customers to whom she provided services for Biomedical. Nevertheless, when asked by Barrett how she intended to perform her responsibilities at Matria in light of the Biomedical noncompete, she stated that "it was not going to be a problem" because "it is not going to restrict me in what I need to do." Naegele explained in her testimony that she told Barrett that the Biomedical noncompete was not going to be an issue because, "I knew I was not going to violate it. I was going to seek the Court's order on what I could and couldn't do because I knew there was a gray area." In fact, Matria told Naegele she could not work until they had an opinion of the court outlining what she could and could not do. Matria knew they would have to adjust Naegele's territory if the "noncompete had any kind of affect on it," and therefore Naegele's territory was determined after the court issued the preliminary injunction. In defining Naegele's territory, Matria ultimately chose states that did not have customers with which Naegele had dealings in her last year at Biomedical.

Moreover, Naegele stated that "Matria has made it very clear to me that I am in no uncertain terms to breach that agreement or attempt to breach that agreement." In fact, when asked whether he had any evidence that Naegele had disclosed confidential information about Biomedical to anyone at Matria, Barrett responded, "I don't have any evidence of that, no.... I cannot tell you I have evidence to date that she did anything specifically to violate the agreement."

Based on the evidence before us, we are unable to find support for the trial court's determination that Naegele threatened to breach the Biomedical noncompete. As stated above, the Biomedical noncompete provides that Biomedical is entitled to recover fees and costs only upon a showing that Naegele breached or threatened to breach the specific restrictions contained in the agreement. Because Biomedical failed to establish that Naegele breached or threatened to breach the Biomedical noncompete, it is not entitled to recover its attorneys' fees and costs from Naegele. Point three is granted.[3]

### III. CONCLUSION

The judgment issuing a permanent injunction is affirmed. The judgment ordering Naegele to pay Biomedical's attorneys' fees and costs is reversed.

KURT S. ODENWALD, P.J. and PATRICIA L. COHEN, J., concur.

---

**3.** In her fourth and final point on appeal, Naegele argues that she is entitled to a remittitur of the award of attorneys' fees and costs.

Because we find that the award of attorneys' fees was in error, it is unnecessary to address the issue of a remittitur.