275 F.3d 168 (2nd Cir. 2001)
 UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT-CROSS-APPELLEE,
MUZAK LLC; AEI MUSIC NETWORK, INC., APPLICANTS-APPELLANTS-CROSS-APPELLEES
v.
BROADCAST MUSIC, INC. DEFENDANT-APPELLEE-CROSS-APPELLANT
 Docket Nos. 00-6123(LEAD), 00-6125(XAP), 00-6157(CON)
August Term, 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: November 20, 2000
December 12, 2001
 
 Plaintiff-Appellant-Cross-Appellee United States of America and Applicants-Appellants-Cross-Appellees Muzak LLC and AEI Music Network, Inc. appeal, and Defendant-Appellee-Cross-Appellant Broadcast Music, Inc. cross-appeals, from an order of the United States District Court for the Southern District of New York (Louis L. Stanton, Judge) dated March 9, 2000, granting in part and denying in part Applicants' motion for an order determining that under a consent decree Broadcast Music, Inc. is required to offer certain forms of licenses to perform works in its repertory, and that such licenses are within the district court's rate-setting authority under the consent decree.
 AFFIRMED IN PART and VACATED AND REMANDED IN PART.[Copyrighted Material Omitted]
 Robert J. Wiggers, United States Department of Justice, Washington, DC (Joel I. Klein, Assistant Attorney General, A. Douglas Melamed, Deputy Assistant Attorney General, Robert B. Nicholson, Robert P. Faulkner Of Counsel), for Plaintiff-Appellant-Cross-Appellee.
 R. Bruce Rich, Weil, Gotshal & Manges Llp, New York, NY (John W. Carroll, Wolfson & Carroll, New York, Ny, Of Counsel), for Applicants-Appellants-Cross-Appellees.
 Norman C. Kleinberg, Michael E. Salzman, David L. Sorgen, Beatrice A. Hamza, Hughes, Hubbard & Reed, New York, NY (Marvin L, Berenson, Joseph J. DiMona, Kerri Howland-Kruse, Broadcast Music, Inc., Of Counsel), for Defendant-Appellee-Cross-Appellant.
 Bruce G. Joseph, Thomas W. Kirby, Wiley, Rein & Fielding, Washington, Dc, for Amici Curiae Television Music License Committee, Radio Music License Committee, ABC, Inc., CBS Broadcasting Inc., National Broadcasting Company Inc.
 John H. Shenefield, Morgan, Lewis & Bockius Llp, Washington, DC (Jonathan M. Rich, Philip C. Zane, Of Counsel), I. Fred Koenigsberg, White & Case Llp, New York, Ny, Richard H. Reimer, New York, Ny, for Amicus Curiae American Society of Composers, Authors and Publishers.
 Before: Oakes, Jacobs and F.I. Parker, Circuit Judges.
 
 F.I. Parker, Circuit Judge
 
 1
 Plaintiff-Appellant-Cross-Appellee United States of America and Applicants-Appellants-Cross-Appellees Muzak LLC and AEI Music Network, Inc. ("Applicants") appeal, and Defendant-Appellee-Cross-Appellant Broadcast Music, Inc. ("BMI") cross-appeals, from an order of the United States District Court for the Southern District of New York (Louis L. Stanton, Judge) dated March 9, 2000, granting in part and denying in part Applicants' motion for an order determining that under a consent decree BMI is required to offer certain forms of licenses to perform works in its repertory, and that such licenses are within the district court's rate-setting authority under the consent decree. The court ruled, in pertinent part, that: the BMI Decree does not compel BMI to offer to Applicants licenses not specifically mandated under the consent decree; it does not have rate-setting authority over Applicants' proposed blanket license with a "carve-out" fee structure; and BMI is required to offer per piece licenses, which are subject to the court's rate-setting authority. The court declined to decide whether individual copyright holders are required to accept fees for per piece licenses that had been determined by the rate court. We conclude that Applicants' request for a blanket license subject to "carve-outs" constitutes a request not for a new type of license, but for a blanket license with a different fee basis, over which the district court has rate-setting authority and which BMI must offer. We vacate the court's judgment on this issue and remand for further proceedings. We further conclude that per piece licenses are subject to the rate court's authority under the decree, and that the question of whether the holder of the copyright on the piece licensed may reject the fee determined by the rate court is not ripe, and affirm the district court with respect to its rulings on these issues.
 
 I. BACKGROUND
 
 2
 BMI is one of the largest performing rights organizations in the country. It grants licenses to music users, collects license fees from them, and distributes the royalties among its affiliated copyright holders ("Affiliates"). Its Affiliates comprise approximately 250,000 songwriters, composers, and publishers, and its catalog includes about three million musical works. Applicants Muzak LLC and AEI Music Network, Inc. provide music environments, often referred to as "background music services," to various commercial clients such as restaurants, retailers, department stores, offices, and supermarkets. The services are provided either by delivery of discs or tapes to the clients, or by satellite transmission.
 
 
 3
 In 1941, the United States brought separate antitrust suits against BMI and its main competitor, the American Society of Composers, Authors and Publishers ("ASCAP"), for unlawfully monopolizing the licensing of performing rights. Both suits were settled by consent decree. United States v. Broadcast Music, Inc., 1940-43 Trade Cas. (CCH) ¶56,096, 381 (E.D. Wisc. 1941); United States v. Am. Soc'y of Composers, Authors, and Publ'rs ("ASCAP"), 1940-43 Trade Cas. (CCH) ¶56,104, 402 (S.D.N.Y. 1941), amended, 1950-53 Trade Cas. (CCH) ¶62,595, 63,750 (S.D.N.Y. 1950) ("ASCAP Decree"). In 1950, the ASCAP consent decree was amended to establish a "rate court" mechanism, which enabled the court to set fees for licenses when license applicants and ASCAP could not come to agreement. United States v. ASCAP, 1950-53 Trade Cas. (CCH) ¶62,595, 63,750 (S.D.N.Y. 1950). The government brought the instant suit against BMI in 1964, and the parties entered into a consent decree two years later. United States v. Broadcast Music, Inc., 1966 Trade Cas. (CCH) ¶71,941, 83,323 (S.D.N.Y. 1966), amended, No. 64-CV-3787, 1994 WL 901652, at *1 (S.D.N.Y. Nov. 18, 1994) (1996-1 Trade Cas. (CCH) ¶ 71,378) ("BMI Decree" or "decree").
 
 
 4
 The BMI Decree places a number of specific restrictions on BMI. Among other things, the decree prohibits BMI from itself publishing, recording or distributing music commercially (Section IV(B)), from refusing to contract with a potential affiliate (Section V(A)), and from discriminating between similarly-situated licensees (Section VIII).
 
 
 5
 The decree specifically requires that BMI grant certain types of licenses. Section VIII(B) requires that BMI license to any broadcaster "the rights publicly to perform its repertory by broadcasting on either a per program or per programming period basis, at [BMI's] option" ("per program license"). Section IX(C) prohibits BMI from refusing to license to "music users other than broadcasters," such as Applicants, a license "at a price or prices to be fixed by [BMI] with the consent of the copyright proprietor for the performance of such specific (i.e., per piece) musical compositions, the use of which shall be requested by the prospective licensee" ("per piece license"). In addition, Section IV(A) prohibits BMI from preventing writers or publishers of a composition from directly licensing their work to a music user.
 
 
 6
 Traditionally, the BMI's license of choice has been a "blanket license," a license that grants the licensee access to BMI's entire repertory in exchange for an annual fee. In Applicants' case, that fee has always been based on the number of licensee's locations that use BMI-licensed works, i.e., on a "per premise" basis. The BMI Decree does not specifically mention the blanket license; however, BMI has historically offered it and Applicants have recently held blanket licenses.
 
 
 7
 In 1994, BMI filed a motion in the district court for an amendment to the BMI Decree adding a "rate court" provision similar to the provision added to the ASCAP Decree in 1950. In support of its motion, BMI argued that "an orderly rate-setting procedure would be a more efficient way to deal with negotiation breakdowns"; a rate court would "balance competition between BMI and ASCAP more fairly"; the major users of BMI's music, radio, television, and cable broadcasters and programmers had asked BMI to seek such a provision; and an interim fee mechanism in the amendment would provide for a continuing relationship between BMI and music users when disputes arose. The government assented, concluding that a rate court provision would be in the public interest because it would foster competition, thereby furthering the antitrust goals behind the original suit. The user community also supported the motion, arguing that a rate court provision would establish a check on anticompetitive behavior such as "demands for arbitrary, substantial, and unwarranted fee increases," threats of copyright infringement litigation, and use of litigation "in order to force users to accede to BMI's fee demands." BMI's motion was granted. United States v. Broadcast Music, Inc., No. 64-CV-3787, 1994 WL 901652, at *1 (S.D.N.Y. Nov. 18, 1994) (1996-1 Trade Cas. (CCH) ¶ 71,378). The new provision was added as Section XIV, and provides in pertinent part:
 
 
 8
 Defendant [i.e., BMI] shall, within ninety (90) days of its receipt of a written application from an applicant for a license for the right of public performance of any, some or all of the compositions in defendant's repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days..., the applicant may forthwith apply to this Court for the determination of a reasonable fee.... If the parties are unable to agree upon a reasonable fee within ninety (90) days..., then defendant may forthwith apply to this Court for the determination of a reasonable fee....
 
 
 9
 Id. Section XIV(B) provides that the rate court shall set an interim fee to be paid while the Section XIV(A) proceeding is pending, and that the permanent fee determined by the rate court will apply retroactively to the date the applicant requested a license.
 
 
 10
 The most recent license that Applicants held was the traditional blanket license, which expired in 1993. While the parties negotiated for a new license, the blanket license was extended on the same terms, and the parties agreed that any new license would be made retroactive to January 1, 1994. BMI terminated these agreements on July 3, 1997. In April 1997, Applicants, in anticipation of this termination, invoked Section XIV's rate court provision and requested quotations for "blanket license, per program license, and per channel license fees such that Muzak and/or AEI will be required to pay BMI solely with respect to such musical programming and individual channels delivered to their subscribers as actually contain BMI music." Applicants later supplemented this request with a request for per piece license fees. In response, BMI provided a quote for a blanket license fee using its traditional per premises calculation, and asked for further information regarding the per program and per channel fees. When negotiations reached an impasse, BMI filed a motion in district court on December 8, 1998, pursuant to Section XIV of the BMI Consent Decree, requesting that the court determine a reasonable fee for the period covering 1994 through 1999. Applicants then moved for a "determination that certain license forms are within this Court's rate setting authority under [Section] XIV of the BMI Consent Decree." In addition to seeking per program and per channel licenses (which are not at issue in this appeal), Applicants sought a rate determination for the blanket license subject to "carve-outs," i.e., "a license that would enable a licensee to reduce its fee obligation to BMI to the extent it had licensed works represented by BMI directly with BMI's composer and music publisher affiliates." According to Applicants, BMI had "flatly refused to entertain such a license fee structure." Applicants also sought a declaration that per piece license fees set by BMI are subject to the court's rate-setting authority under Section XIV.
 
 
 11
 The district court, inter alia, denied Applicant's motion with respect to their request for a blanket license subject to "carve-outs," granted it with respect to their request for a per piece license, and declined to determine whether or not, after a per piece license fee had been set by the court, the copyright holder of the licensed work could reject the fee. United States v. Broadcast Music, Inc. (In re Application of AEI Music Network, Inc.), No. 64-CV-3787, 2000 WL 280034, at *1 (S.D.N.Y. Mar. 9, 2000) (2000-2 Trade Cas. (CCH) ¶ 72,979) ("In re Appl. of AEI").
 
 
 12
 With respect to Applicants' request for a rate determination on the blanket license subject to "carve-outs," the court concluded that to require BMI to offer such a license would "stretch the concept of rate-setting too far" and denied their request. Id. at *3. The court rejected Applicants' characterization of their motion as one for a rate determination on the blanket license, reasoning that
 
 
 13
 the rate is not the only thing changed in such a license; it would also alter the legal rights of the parties. In addition to access to all of BMI's repertory of music (regardless of which titles the licensee chooses to play) for one flat fixed fee, the licensee would also gain the additional right to use some of the repertory for nothing, if he obtains a direct license for it elsewhere.... Th[is] change... is a change in the rights of the licensor and licensee, not merely a change in price.
 
 
 14
 Id.
 
 
 15
 The court also rejected the notion that the phrase "any, some or all" in Section XIV(A) means that BMI must offer any type of license that is requested under the Decree. The court concluded that the language of Section XIV(A) "serves only to establish the machinery for requesting and determining reasonable fees for those licenses which are mandated elsewhere in the Decree." Id. In reaching this conclusion, the court relied on this Court's opinion in United States v. ASCAP (Application of Shenandoah Valley Broadcasting, Inc.), 331 F.2d 117, 121-22 (2d Cir. 1964) (Friendly, J.) ("Shenandoah"), in which we interpreted an identically worded provision in the ASCAP Decree and concluded that in the context of the overall decree, "the sentence [relates] to requests for licenses which some other portion of the Judgment required ASCAP to grant." In re Appl. of AEI, 2000 WL 280034, at *4 (quoting Shenandoah, 331 F.2d at 122). Therefore, concluded the court, "BMI cannot be required to provide a form of license that is not specifically mandated under the Decree." Id.
 
 
 16
 With respect to per piece licenses, the district court concluded that since "[n]othing in the Decree... suggests that per piece licensing is not subject to the rate-setting provisions of Section XIV," it possesses jurisdiction to determine a reasonable fee for a per piece license. Id. at *6. The court declined, however, to determine whether the language in Section IX(C) ("with the consent of the copyright proprietor") means that, after the court has made such a determination, the copyright holder's consent is still required. "[D]etermination of that issue would be advisory only," the court reasoned, since the issue has been neither presented by a copyright holder's refusal, nor adequately briefed by the parties. Id.
 
 II. DISCUSSION
 
 17
 The district court had jurisdiction over this antitrust action pursuant to 15 U.S.C. § 4, 28 U.S.C. § 1331, and 28 U.S.C. § 1345; it possessed jurisdiction over the enforcement and construction of the BMI Decree pursuant to Section XIII of the decree, United States v. Broadcast Music, Inc., 1966 Trade Cas. (CCH) ¶71,941, at 83,327; and it possessed jurisdiction over the rate determination proceeding pursuant to Section XIV(A) of the BMI Decree, United States v. Broadcast Music, Inc., 1994 WL 901652, at *1. The district court has entered final judgment pursuant to Federal Rule of Civil Procedure 54(b) with respect to the claims now on appeal, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 18
 We review the district court's interpretation of a consent decree de novo, and its factual findings for clear error. See EEOC v. N.Y. Times Co., 196 F.3d 72, 78 (2d Cir. 1999); Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985) ("The construction of a consent decree is an issue of law freely reviewable by this court.").
 
 
 19
 Because consent decrees embody a compromise between parties who have waived their rights to litigation, "they should be construed basically as contracts." United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236 (1975). When the language of a consent decree is unambiguous, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." United States v. Armour & Co., 402 U.S. 673, 682 (1971); see also United States v. Am. Cyanamid Co., 719 F.2d 558, 564 (2d Cir. 1983)(applying the "four corners" rule when decree language was "quite clear"). Thus, "deference is to be paid to the plain meaning of the language of a decree and the normal usage of the terms selected." Berger, 771 F.2d at 1568. However, [w]here... a term of a consent decree is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent, including the circumstances surrounding the formation of the decree." King v. Allied Vision, Ltd., 65 F.3d 1051, 1059 (2d Cir. 1995); see also E.E.O.C. v. Local 40, Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers, 76 F.3d 76, 80 (2d Cir. 1996). A court reviewing an ambiguous consent decree provision may also examine "any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." ITT Cont'l Baking Co., 420 U.S. at 238; see also Reynolds v. Roberts, 202 F.3d 1303 (11th Cir. 2000) (approving for the interpretation of ambiguous consent decree provisions, evidence of party negotiations, prior course of performance, prior course of dealing, usage of trade, and traditional contract presumptions such as construing contracts against the drafting party). In addition, when faced with unclear language in a consent decree, "a court of equity may, in construing the provision, consider the purpose of the provision in the overall context of the judgment at the time the judgment was entered. Using its equitable power, a court may modify a decree in response to changed conditions." Am. Cyanamid Co., 719 F.2d at 564 (citing United States v. Swift, 286 U.S. 106, 114 (1932)).
 
 A. Applicants' blanket license request
 
 20
 Applicants and both parties to the BMI decree agree that the district court has the authority under Section XIV to set a reasonable fee for the traditional blanket license. We agree as well.
 
 
 21
 Although the decree does not mention the blanket license by name, the plain language of Section XIV requires that BMI quote a fee for the blanket license. The provision requires that BMI "shall [upon] receipt of a written application... for a license for the right of public performance of... all of the compositions in defendant's repertory, advise the applicant in writing of the fee it deems reasonable." Since a request for a blanket license is simply a request for a license for performance rights to "all of the compositions in defendant's repertory," we read Section XIV to require that BMI quote a fee for a blanket license and, if the parties cannot agree, submit to the district court's rate determination proceeding.
 
 
 22
 Moreover, "the overall context of the judgment at the time the judgment was entered" and amended, Am. Cyanamid Co., 719 F.2d at 564, makes clear that the parties contemplated both that BMI would always offer a blanket license and that Section XIV would apply to requests for blanket licenses. BMI contends, for example, that "by 1994 it was so well understood that BMI would always want to offer its blanket license that it would have been superfluous to enter an order requiring BMI to do so." Similarly, the government stated in its 1994 memorandum in response to BMI's motion to modify the decree that "[f]or most bulk music users... the convenience and efficiency of blanket licensing may make it the licensing method of choice. For these users, [a rate court provision] may provide additional protection against any attempt by BMI to exercise market power in the pricing of its blanket license."
 
 
 23
 We therefore have no trouble concluding that Section XIV(A) requires BMI, upon request for a blanket license, to quote a fee it deems reasonable for that license, and that Section XIV(A) empowers the district court to set a reasonable fee if the parties cannot come to agreement.
 
 
 24
 With this preliminary interpretation in mind, we turn to Applicants' request for a blanket license. Applicants propose that the district court has rate setting authority under Section XIV of the decree to determine a reasonable rate for a blanket license with a fee structure that includes reductions (or "carve-outs") to reflect any per piece licenses (required to be offered by Section IX(C)) or direct licenses (required to be permitted by Section IV(A)) held by Applicants. They contend that such a license amounts to nothing more than a traditional blanket license with a particular fee structure. BMI contends that a blanket license with such a fee structure is fundamentally different from the traditional blanket license. The district court concluded that such a fee reduction would "alter the legal rights of the parties" by giving Applicants access to part of BMI's repertory "for nothing," and that, therefore, Applicants had requested a new type of license not falling within the ambit of the court's rate-setting authority. In re Appl. of AEI, 2000 WL 280034, at *3 (relying on Shenandoah, 331 F.2d at 121-22). We disagree with this characterization of Applicants' proposal. Under the proposed fee structure, Applicants would be gaining use of part of the repertory either by paying BMI a per piece license fee, or by paying a fee to the copyright holder. The only modification Applicants have proposed to the traditional blanket license is in the way the fee is calculated, which is, of course, exactly what is contemplated in the rate court provision.
 
 
 25
 We reject the construction, urged by BMI, that Section XIV applies only to those licenses specifically mentioned in the BMI Decree, and to the traditional blanket license with its traditional per premise fee structure.
 
 
 26
 BMI argues, and the district court agreed, that Shenandoah requires this construction. In re Appl. of AEI, 2000 WL 280034, at *3-4. In Shenandoah, the applicants, a group of television stations, sought a unique license which would grant them rights only to a certain portion of ASCAP's repertory. See United States v. ASCAP (Application of Shenandoah Valley Broad., Inc.), 208 F. Supp. 896, 897 (S.D.N.Y. 1962), aff'd on remand, 331 F.2d 117 (2d Cir. 1964)(describing proposed license as "a composite sort of license, containing a little bit of both" the per program license and the blanket license). We held that in the overall context of the ASCAP Decree, the rate court provision does not mandate such a license because the "any, some or all" language in the provision relates only to licenses mentioned elsewhere in the ASCAP Decree. 331 F.2d at 121-22. Here, in contrast, Applicants have requested a license to all of the compositions in BMI's repertory and not to a subset thereof. The requested license would differ from the traditional blanket license only in its fee structure. Moreover, as discussed above, although the blanket license is not specifically mentioned elsewhere in the BMI decree, all parties agree it is required to be issued on request under Section XIV(A) and subject to the rate setting provision. Thus, whatever relevance Shenandoah might have to requests for new types of licenses, it does not compel the same outcome here since Applicants have requested a blanket license with a revised fee structure.
 
 
 27
 Therefore, we construe Section XIV to require that when an applicant may obtain alternative licensing under the BMI Decree, and the applicant requests a blanket license with a fee structure that reflects such alternative licensing, BMI must advise the applicant of the fee it deems reasonable for such a license. Failure to do so will empower the district court to set a reasonable fee.
 
 
 28
 In light of this construction, and because we view Applicants' request as one for a blanket license, we vacate the judgment of the district court with respect to its decision to deny Applicants' motion for an order determining that it has authority to set a reasonable fee for a blanket license with a fee structure that reflects per piece and direct licenses, and remand the case to the district court for further proceedings.
 
 B. Applicants' per piece license request
 
 29
 Applicants have requested a per piece license[1] from BMI and moved the district court for an order determining that such a license is within the court's rate-setting authority. The district court granted the motion, interpreting the "any, some or all" language in Section XIV(A) to apply to per piece licenses and noting that "[n]othing in the Decree... suggests that per piece licensing is not subject to the rate setting provisions of Section XIV." In re Appl. of AEI, 2000 WL 280034, at *6. BMI appeals from this ruling, contending that the words "with the consent of the copyright proprietor" in Section IX(C) provide copyright holders with a veto over BMI's ability to offer per piece licenses, thereby creating a conflict between the per piece licensing provision and Section XIV. We disagree with BMI's contention.
 
 
 30
 First, it appears that the phrase "with the consent of the copyright proprietor" modifies the language that comes directly before it: "at a price or prices to be fixed by defendant." We conclude that the clause simply imposes a requirement that BMI obtain the consent of the copyright holder before fixing and quoting a price to the applicant for the per piece license, rather than requiring the prior consent of the proprietor before BMI may offer a per piece license.
 
 
 31
 In addition, the plain meaning of the language of Section XIV(A) indicates that per piece licenses are subject to the district court's rate-setting authority. Section XIV requires that BMI offer a rate quote upon request for a license for "any, some or all" of BMI's repertory. Whatever the scope of this language,[2] it is clear that the word "any" covers requests for per piece licenses. Furthermore, Shenandoah compels this construction since here, as in that case, "some other portion of the judgment require[s] [BMI] to grant" per piece licenses. 331 F.2d at 121-22.
 
 
 32
 We therefore decline to adopt BMI's proposed construction and affirm the district court's judgment with respect to Applicants' motion for an order determining that the per piece license is within the district court's rate-setting authority.
 
 
 33
 The question still remains, however, whether the phrase "with the consent of the proprietor" also means that a copyright holder must consent to the rate determination arrived at in a Section XIV proceeding. Applicants appeal from the district court's decision to hold this question in abeyance; the court reasoned that "the issue ha[d] not been presented by any proprietor's refusal," nor had it been adequately briefed. In re Appl. of AEI, 2000 WL 280034, at *6.
 
 
 34
 "An issue is ripe for judicial resolution only if it presents a real, substantial controversy, not a mere hypothetical question. Pursuant to ripeness doctrine, we must avoid entangling ourselves in abstract disagreements and engaging in premature adjudication." Longway v. Jefferson County Bd. of Supervisors, 24 F.3d 397, 400 (2d Cir. 1994) (internal quotation marks and citations omitted). The ripeness doctrine "cautions courts against adjudicating contingent future events that may not occur as anticipated, or indeed may not occur at all. Two additional factors, the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration, also inform any analysis of ripeness." Volvo N. Am. Corp. v. Men's Int'l Prof. Tennis Coun., 857 F.2d 55, 63 (2d Cir. 1988)(internal quotation marks and citations omitted). As a conclusion of law, a determination that an issue is not ripe is reviewed de novo. Prima U.S., Inc. v. Panalpina, Inc., 223 F.3d 126, 129 (2d Cir. 2000).
 
 
 35
 We hold that this issue is not ripe for adjudication and agree with the district court that to decide the question now would be to issue an advisory opinion. Applicants argue that the district court's decision not to decide the issue places them in an untenable position, because they now must go through the rate determination proceeding while facing the possibility that the copyright holder might then attempt, and be permitted, to veto the outcome of that proceeding. The fact remains, however, that at this juncture Applicants have suffered no injury, and the threat of an injury is speculative--a "contingent future event" that "may not occur at all." Volvo N., 847 F.2d at 63. "[A] federal court lacks the power to render advisory opinions," United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446 (1993) (internal quotation marks and brackets omitted). We therefore affirm the district court's decision not to decide the issue.
 
 III. CONCLUSION
 
 36
 For the reasons set forth above, the district court's judgment is vacated with respect to its decision to deny Applicants' motion for an order determining that a blanket license with a fee structure reflecting alternative licensing is subject to the court's rate-setting authority, and the case is remanded to the district court for further proceedings. The district court's decisions to grant Applicants' motion for an order determining that the per piece license is subject to the court's rate-setting authority, and not to determine whether the holder of the copyright for work licensed in a per piece license must consent to the fee set by the court, are affirmed.
 
 
 
 NOTES:
 
 
 [1]
 Section IX(C) of the BMI Decree provides:
 Defendant shall not, in connection with any offer to license by it the public performance of musical compositions by music users other than broadcasters, refuse to offer a license at a price or prices to be fixed by defendant with the consent of the copyright proprietor for the performance of such specific (i.e., per piece) musical compositions, the use of which shall be requested by the prospective licensee.
 United States v. Broadcast Music, Inc., 1966 Trade Cas. (CCH) ¶71,941, 83,326-27 (S.D.N.Y. 1966).
 
 
 [2]
 In light of the conclusions we have set forth in this opinion, we need not address Appellants' argument that the "any, some, or all" language in Section XIV requires BMI to quote a fee for, and offer, any type of license an applicant might request. We are presented in this appeal with requests for two types of licenses: the blanket license, which BMI has stated it will always want to offer, and the per piece license, which is explicitly required in Section IX(C). The question of whether or not the provision requires BMI to offer some other form of license, should one be requested, is not necessary to the resolution of the issues on appeal and we leave it for another day.