Joseph KELLY, Plaintiff,

v.

EVOLUTION MARKETS, INC., Defendant.

No. 08 Civ. 10757 (SCR).

United States District Court, S.D. New York.

March 4, 2009.

---

Gary Trachten, Alisa Lynn Silverstein, Kudman Trachten Aloe, LLP, New York, NY, for Plaintiff.

David Brian Wechsler, Marc Owen Sheridan, Wechsler & Cohen, LLP, New York, NY, for Defendant.

## ORDER

STEPHEN C. ROBINSON, District Judge:

Plaintiff Joseph Kelly seeks a partial summary declaratory judgment that absolves him from contractual non-compete, non-solicit, and non-recruit agreements with his former employer, Evolution Markets, Inc. Evolution Markets opposes the motion and "cross-moves" for an order sealing the record of the parties' confidential employment contract. Additionally, Evolution Markets seeks a temporary restraining order (TRO) and a preliminary injunction preventing Kelly from violating a non-solicitation clause in the parties' Employment Agreement. For the reasons set forth in this Order, Kelly's motion for summary judgment is denied, and Evolution Markets' motion to seal the record is granted. Further, Kelly is preliminarily enjoined from soliciting current or potential clients of Evolution Markets until the

earlier of—(1) a final disposition in this case or (2) May 5, 2009, the date established by the Employment Agreement.

## I.  Background
### a.  Procedural History

The Complaint, premised on diversity jurisdiction, was filed on December 11, 2008.  Pursuant to Rule 56(a)(1) of the Federal Rules of Civil Procedure, Kelly moved for partial summary judgment after 20 days elapsed from the commencement of the action.  On January 6, 2009, Kelly brought an order to show cause why summary judgment should not be granted in his favor on his first six claims—each for declaratory relief.  Evolution Markets filed its brief on January 16, and Kelly replied on January 20.  Both sides submitted affidavits in support of their positions on summary judgment.  No discovery has occurred.

The Court heard oral argument on Kelly's motion on January 23, 2009, reserving decision on the merits.  Before this Court had an opportunity to issue its opinion, Kelly notified the Court via letter on February 23, 2009, that "commencing February 25, 2009, he [Kelly] intends to begin conducting his affairs in accordance with his contention that he is not bound by ¶ 6.3 of the Employment Agreement, i.e. the provision that purports to prohibit his communications with and solicitation of prospective clients who have clients and/or potential clients of EvoMarkets."  Letter from Gary Trachten to the Honorable Stephen C. Robinson, dated Feb. 20, 2009.  In response to Kelly's stated intention to begin contacting current or prospective clients of Evolution Markets, the defendant wrote a letter to this Court, received February 24, 2009, requesting a TRO prohibiting Kelly from violating the non-solicitation provisions of the parties' Employ-

ment Agreement.[1]  Letter from David B. Wechsler to the Honorable Stephen C. Robinson, dated Feb. 23, 2009.  Given the Court's familiarity with the issues underlying the defendant's request, the Court declined an offer for further briefing and heard oral argument on the TRO application on February 25, 2009.  At oral argument and upon questioning from the Court, the defendant stated its willingness to amend its pleadings as necessary in light of Kelly's intention to solicit Evolution Markets' clients.  At the direction of the Court, Evolution Markets submitted its Amended Answer and Counterclaims on March 2, 2009.

### b.  Factual Allegations

Evolution Markets (a.k.a. EvoMarkets) brokers transactions involving energy and environmental commodities (e.g., natural gas, coal, carbon, uranium, and ethanol), and develops energy risk management strategies for many Fortune 500 companies.  Affidavit of Andrew O. Ertel, dated Jan. 15, 2009 (Ertel Aff.) ¶¶ 13–14.  EvoMarkets hired Kelly on August 6, 2007, as a Vice President of Institutional Sales in its White Plains, New York, office for a one-year term expiring on August 5, 2008.  See Plaintiff's Affidavit in Support of Motion, dated Jan. 5, 2009 (Kelly Aff.) ¶ 3; Ertel Aff. ¶ 22; Employment Agreement, cl. 2.1 (Ex. A to Kelly Aff.).  Soon after his hire, Kelly was promoted to the position of uranium broker.  Kelly Aff. ¶ 3.  In this position, EvoMarkets paid Kelly an annual base salary of $150,000 and $467,500 in discretionary bonuses in 2008.  Ertel Aff. ¶¶ 5, 38.

In June 2008, EvoMarkets declined to renew the terms of the Employment Agreement.  Compl. ¶ 10; see Employment Agreement, cl. 2.4 (renewal provi-

---

1. The defendant subsequently formalized its request for a preliminary injunction or TRO by filing a Notice of Motion on March 2, 2009 (docket entry 23).

sion). Thereafter, EvoMarkets continued to employ Kelly until November 21, 2008, compensating him at the salary and benefits negotiated in the Employment Agreement. Compl. ¶¶ 14–17. The parties agree that the terms of Kelly's employment at EvoMarkets after August 6, 2008, are not governed by the Employment Agreement, except insofar as certain provisions expressly survived beyond August 6, 2008—specifically, the restrictive covenants discussed below. Compl. ¶ 11; Rule 56.1 Statement 13; Rule 56.1 Counterstatement ¶ 3.

On November 21, 2008, EvoMarkets fired Kelly "for cause." [2] *See* Termination letter from Saul Sarrett to Joseph Kelly, dated Nov. 21, 2008 (Ex. B to Kelly Aff.). The reasons for Kelly's dismissal were: (1) "wrongful solicitation of Company employees to leave the Company and join you at a new employer"; (2) "wrongful taking of the Nuclear Fuel Contact List of the Company's Uranium Desk"; and (3) disclosure of the parties' confidential Employment Agreement "to at least one third party." *Id.* Kelly alleges that his termination was, in fact, without cause and offers justifications for each purported "cause". Compl. ¶ 23; Kelly Aff. ¶¶ 7–11.

EvoMarkets informed Kelly that it intended to enforce the restrictive covenants in the Employment Agreement.[3] Specifically, Kelly cannot:

- directly or indirectly be a principal, partner, officer, owner, stockholder, employee, consultant, advisor, guarantor or lender to any business which provides the same of similar services as any of those services offered by EvoMarkets until February 5, 2009 (Employment Agreement, cl. 6.1(a) ("non-compete"));
- solicit business or have any direct or indirect business dealings or communications with any client or potential client of the company until May 5, 2009 (Employment Agreement, cl. 6.3 ("non-solicitation")); or
- hire any of EvoMarkets' employees or candidate employees, encourage any employee to resign, or make any negative statements about EvoMarkets to any employee or candidate employees (and/or to any other persons) until November 5, 2009 (Employment Agreement, cl. 6.5 ("non-recruitment")).

Under the Employment Agreement, Kelly is entitled to receive his full base salary during the post-employment, non-compete term if he was terminated without cause. Employment Agreement, cl. 6.1(b). However, because Kelly was purportedly terminated for cause, he does not receive compensation, but still must comply with the restrictive covenants. *Id.*, cl. 6.1(f).

Kelly claims to have at least one concrete opportunity to work for a competitor of EvoMarkets. Compl. ¶ 24. Kelly wishes to begin new employment immediately, but risks liability to EvoMarkets if

---

**2.** "Cause" is defined in the Employment Agreement at clause 6.1(g):

Cause shall mean: (i) your engagement in misconduct which, in our view, is or may be injurious to us; (ii) your failure, in our view, to satisfactorily perform your duties to the EvoMarkets; (iii) your dishonesty, in our view, which affects your ability to perform your duties; (iv) your breach of any provision of this Agreement and/or any policy of EvoMarkets; (v) your overstatement or misrepresentation of material facts or your ability to perform during your pre-employment interview process; or (vi) your commission of an act or acts constituting any (x) fraud against, or misappropriation or embezzlement from EvoMarkets, (y) crime involving moral turpitude, or (z) offense that could result in a jail sentence of at least 30 days.

**3.** The Court notes that the restrictive covenant period begins at the end of the Employment Agreement term (August 5, 2008), rather than upon Kelly's November 21 firing.

his employment violates the restrictive covenant provisions. Kelly claims that he "stands to lose a great deal of earning opportunity if he cannot fairly immediately" compete with EvoMarkets and communicate with EvoMarkets' clients, and he seeks clarification from this Court whether his immediate competition with EvoMarkets would violate the Employment Agreement. Pl.'s Mem. of Law in Support of Mot., p. 3.

## II. Standard of Review on Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). Summary judgment is inappropriate unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In conducting this inquiry, all facts and reasonable inferences must be construed in favor of the non-moving party. This Court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the Court determines whether there exists a genuine issue of

triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial, offering evidence upon which a jury reasonably could find in the non-movant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Kelly offers two arguments in favor of summary judgment. First, Kelly argues that the restrictive covenants are unenforceable because he was not properly fired for cause.[4] Second, even if EvoMarkets had cause to fire Kelly, he contends that the restrictive covenants are unenforceable and void as violative of public policy. Kelly seeks a declaratory judgment that he is relieved of the restrictive covenants on either basis.[5]

---

4. Kelly breaks this into two arguments in his brief. First, that EvoMarkets breached the material terms of the Employment Agreement by failing to pay his base salary during the non-compete period, thus discharging Kelly of any obligations under the restrictive covenants. Second, that the restrictive covenants are void as violative of public policy because Kelly was not properly terminated for cause. Because both arguments turn on the factual question of whether Kelly was terminated for cause, the issues are consolidated for purposes of this Order.

5. Under the Declaratory Judgment Act, "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Under the Act, courts are to evaluate "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

### a. Termination for Cause

Kelly's first three causes of action require the Court to find that Kelly was improperly terminated for cause.[6] The conflicting affidavits are rife with triable issues of material fact, precluding summary judgment in Kelly's favor on this matter.

■ First, the parties dispute whether Kelly disclosed his confidential employment contract in violation of clause 6.4(a) of the Employment Agreement.[7] Initially, Kelly divulged only that he disclosed his Employment Agreement on October 31, 2008, to his attorney for purposes of clarifying his contractual duties. Specifically, Kelly inquired of his lawyer, "When can I leave and start my own business?" Kelly Aff. ¶¶ 10–11. In response, EvoMarkets submits an e-mail from Kelly to Doug Rhoten, an employee of ICAP, a competitor of EvoMarkets. In the e-mail, Kelly states, "I will send my contract over to you Monday[.] [P]lease supply me with your fax number." *See* E-mail from Joe Kelly to Doug Rhoten, dated July 18, 2008 (Ex. B to Ertel Aff.). In reply, Kelly admits to sending ICAP his confidential Employment Agreement. *See* Reply Affidavit of Joseph Kelly, dated Jan. 19, 2009 (Kelly Reply Aff.) ¶ 2. If there is indeed consensus on this point, then the undisputed facts

counsel in favor of EvoMarkets' position, not Kelly's.

■ Second, the parties dispute whether Kelly "wrongful[ly] solicit[ed] . . . Company employees to leave the Company and join [him] at a new employer." *See* Termination letter from Saul Sarrett to Joseph Kelly, dated Nov. 21, 2008 (Ex. B to Kelly Aff.). Kelly denies that he ever encouraged any EvoMarkets employee to leave. Kelly Aff. ¶ 7. However, David Doyle, a Natural Gas Options broker at EvoMarkets, swore an affidavit stating that Kelly, in mid-October 2008, solicited Doyle's interest in leaving EvoMarkets and joining Kelly to start a competing enterprise in Stamford, Connecticut. Affidavit of David Doyle, dated Jan. 12, 2009 (Doyle Aff.) ¶¶ 2–6; *see also* Ertel Aff. ¶ 40.

■ Third, the parties dispute Kelly's misappropriation of the company's Nuclear Fuel Contact List. Kelly claims that he brought the Nuclear Fuel Contact List to his home to further EvoMarkets' business interests. Kelly Aff. ¶ 8. Specifically, Kelly alleges that he needed to contact international clients at different times of the day and that he sometimes worked from home. *See* e-mails sent from Kelly's home account (Ex. C to Kelly Aff.). In response, EvoMarkets contends that Kelly "wrongfully misappropriated its Nuclear Fuel

---

**6.** *See* Compl. ¶ 31 (first cause of action) ("As a matter of judicially recognized public policy, *by reason of EvoMarkets' involuntary termination of Kelly's employment without good cause,* Kelly became discharged from the non-competition provision set forth in Section 6.1 of the Employment Agreement.") (emphasis supplied); *id.* ¶ 36 (second cause of action) ("As a matter of judicially recognized public policy, *by reason of EvoMarkets* [sic] *involuntary termination of Kelly's employment without good cause,* Kelly became discharged from the restrictive covenant set forth in Section 6.3 of the Employment Agreement.") (emphasis supplied); *id.* ¶ 39 (third cause of action) ("By refusing and failing to pay Kelly contin-

ued post-employment compensation *predicated on its misdesignation as for contractual 'Cause' its termination of Kelly's employment,* EvoMarkets breached its post-Term obligations under the Employment Agreement.") (emphasis supplied).

**7.** Clause 6.4 states: "While you are working with us and thereafter, you may not disclose or make available to any person, firm or corporate entity or use directly or indirectly any 'Confidential Information'. Confidential Information shall mean: (a) the terms of this Agreement, including without limitation your compensation . . . ."

Contact List when he sent it to his personal, home e-mail address for no good faith reason, as part of his intended plan to leave defendant and join a competitor where he would unlawfully use such Contact List." Rule 56.1 Counterstatement ¶¶ 8–9; *see* Ertel Aff. ¶ 42. In support of its position, EvoMarkets points out that Kelly had, at all relevant times, remote access to business files from his home computer. Ertel Aff. ¶ 42. Therefore, EvoMarkets argues, Kelly had no need to e-mail the Contact List to his personal e-mail account, and this act was done to appropriate valuable company secrets.

These three issues raise, at a minimum, a question of fact whether Kelly was legitimately fired for cause. At summary judgment, this Court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the Court determines whether there exists a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Finding material facts of Kelly's termination for cause to be in dispute, Kelly is not entitled to summary judgment on his first, second, and third causes of action. *See Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 255 (2d Cir.2002) ("[T]he factual determination whether an employee was involuntarily terminated is generally not appropriate for summary judgment.").

### b. Restrictive Covenants

█ Alternatively, Kelly argues that the restrictive covenants are unenforceable because they violate New York public policy. We begin with the threshold question of whether post-employment covenants in restraint of trade can be enforceable under any circumstances under New York law.[8] The answer is unequivocally yes. *See Natsource LLC v. Paribello*, 151 F.Supp.2d

465, 470 (S.D.N.Y.2001) (New York law) (granting preliminary injunction to energy brokerage to enforce restrictive covenants that prevent former employer from competing, soliciting customers, and recruiting brokerage's employees for a reasonable time); *DS Courier Servs., Inc. v. Seebarran*, 40 A.D.3d 271, 272, 834 N.Y.S.2d 191 (N.Y.App.Div.2007) (enforcing restrictive covenant that prohibits defendant from negotiating directly or indirectly with any of six identified customers of plaintiff for a period of 120 days after termination of defendant's service, voluntary or otherwise); *see also* 104 N.Y. Jur.2d Trade Regulation § 64 ("A covenant given by an employee to an employer that he or she will not compete with the employer after quitting the employment is enforceable, subject to the limitation of reasonableness."); 52 N.Y. Jur.2d Employment Relations § 194 ("A former employee may solicit his former employer's customers *in the absence of an express contract to the contrary* or any secret of confidential character of the employment.") (emphasis supplied).

Although agreements that restrain free employment are enforceable under certain circumstances, the Court's examination of restrictive covenants is rigorous. As the Court of Appeals for the Second Circuit has summarized:

> New York courts adhere to a strict approach to enforcement of restrictive covenants because their enforcement conflicts with the general public policy favoring robust and uninhibited competition, and powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood. Thus, a restrictive covenant will be rigorously examined, and enforced

**8.** New York substantive law governs this case. Employment Agreement, cl. 9 (designating

New York law and venue).

only to the extent necessary to protect the employer from unfair competition which stems from the employee's use or disclosure of trade secrets or confidential customer lists, or confidential customer information, to protect the good will of the employer's business, or perhaps when the employer is exposed to special harm because of the unique nature of the employee's services. Only after determining that a restrictive covenant would serve to protect against such unfair and illegal conduct and not merely to insulate the employer from competition, does the reasonableness of the covenant in terms of its time, space or scope, or the oppressiveness of its operation become an issue.

*American Inst. of Chem. Eng'rs v. Reber–Friel Co.*, 682 F.2d 382, 386–87 (2d Cir. 1982) (internal quotation marks and citations omitted). Thus, this Court must assess whether EvoMarkets has a legitimate business interest necessary to sustain each of the restrictive covenants.

In an affidavit submitted by EvoMarkets' President and CEO, Andrew Ertel states that EvoMarkets "taught him [Kelly] the business, introduced him to our client base, and ... entrusted him with our evolving and confidential Nuclear Fuel Contact List and other proprietary information (some contained on the list) about our clients, the identities of their contact persons, and their respective buying and selling strategies, tendencies, likes and methods, and their activities and positions in the markets." Ertel Aff. ¶ 5. EvoMarkets claims to have spent over $200,000 in non-compensatory expenses to help Kelly "forge trusting and special, indeed unique, relationships with both our existing and new clients." *Id.* EvoMarkets has invested heavily in Kelly's training and networking, trusting him with valuable company information about its customers. *Id.* ¶¶ 34–35. The restrictive covenants to which Kelly agreed were established to

protect EvoMarkets' investment in Kelly, and, in the event that Kelly leaves the company, to allow EvoMarkets an opportunity to retain its clients' trust and business through another broker that replaces Kelly. *See Portware, LLC v. Barot*, 11 Misc.3d 1059(A), at *5, 2006 WL 516816 (N.Y.Sup.Ct.2006) ("Portware's legitimate interest in enforcing the non-solicitation covenant is to protect against Barot's competitive use of customer relationships that Portware enabled him to acquire through his position as account manager at Portware."). At a minimum, EvoMarkets' desire to protect its goodwill that it fostered with customers constitutes a legitimate business interest. *DS Courier Servs.*, 40 A.D.3d at 272, 834 N.Y.S.2d 191 ("[T]he covenant legitimately protects the goodwill that plaintiff had developed with certain of its customers."). Therefore, the Court finds sufficient evidence of a *prima facie* legitimate business interest necessary to justify the restrictive covenants.

The Court now assesses the reasonableness of each covenant's scope. Although Kelly originally sought declaratory relief on the non-compete covenant, Kelly withdraws that claim from both his Complaint and motion for summary judgment, conceding that the claim became moot after February 5, 2009. The remaining restrictive covenants are considered below.

#### i. Non–Solicitation

■ Clause 6.3 of the parties' Employment Agreement prohibits Kelly from soliciting EvoMarkets' clients and potential clients for a period of nine months:

You recognize the special nature and importance of EvoMarkets['] relationship with its Clients. During the Non–Compete Period and the three months thereafter, you will not, directly or indirectly, (a) solicit business or (b) have any direct or indirect business dealings or communications, directly or indirectly, with any Client with whom you have

had any contact or whose existence you became aware during the 180 days immediately preceding your Last Day.

█ A covenant restricting Kelly's ability solicit his former employer's customers is not unenforceable *per se*. *See* 52 N.Y. Jur.2d Employment Relations § 194. In fact, where an employer's customer list was obtained "through years of effort and advertising, involving time, money, and enterprise, and was not found openly in well-advertised locations," courts have held that the former employer could enjoin use of that list even without an express covenant. *Id.*

█ A customer list is not confidential where the past or prospective customers are "readily ascertainable" from nonconfidential sources outside the employer's business. *Columbia Ribbon & Carbon Mfg. Co. v. A–1–A Corp.*, 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (N.Y. 1977) (citing *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 392, 328 N.Y.S.2d 423, 278 N.E.2d 636 (N.Y.1972)); *Apa Sec., Inc. v. Apa*, 37 A.D.3d 502, 502, 831 N.Y.S.2d 201 (N.Y.App.Div.2007) (denying a company's request for a preliminary injunction to prevent non-solicitation where "the identities of its customers did not constitute a trade secret because they were readily ascertainable from nonconfidential sources"). In contrast, a court will prevent the solicitation by a former employee of customers "who are not openly engaged in business in advertised locations or whose availability as patrons cannot readily be ascertained but 'whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the goodwill of a business which enterprise and foresight have built up.'" *Town & Country House & Home Serv., Inc. v. Newbery*, 3 N.Y.2d 554, 558, 170 N.Y.S.2d 328, 147 N.E.2d 724 (N.Y.1958) (quoting *Witkop & Holmes Co. v. Boyce*, 61 Misc. 126, 131,

112 N.Y.S. 874 (N.Y.Sup.Ct.1908), *aff'd*, 131 A.D. 922, 115 N.Y.S. 1150 (N.Y.App. Div.1909)).

Kelly argues that the identity of clients desiring EvoMarkets' services is readily available on the Internet and by attending industry trade shows. Kelly Aff. ¶ 9. EvoMarkets disputes that its clients' identities are readily available. Ertel Aff. ¶¶ 3 n. 1. Moreover, EvoMarkets protects important market intelligence related to its clients' particular characteristics, including "their historical buying and selling techniques, their desires, and their activity and positions in the marketplace, all of which are not publicly available." *Id.* ¶ 46.

Considering the arguments presented by both sides, the Court finds indicia that EvoMarkets' customer list is confidential and protectable by a reasonable non-solicitation clause. Furthermore, the covenant is reasonable in scope and duration, and it is therefore *prima facie* enforceable. *DS Courier*, 40 A.D.3d at 272, 834 N.Y.S.2d 191. New York courts have effected such covenants for a one-year period. *See Healthworld Corp. v. Gottlieb*, 12 A.D.3d 278, 786 N.Y.S.2d 8 (N.Y.App.Div.2004); *Portware, LLC*, 11 Misc.3d 1059(A), at *5 ("[T]o the extent that the Agreement bars Barot from soliciting, communicating, or transacting business with customers or potential customers with whom he first developed a relationship at Portware, for a twelve-month period following the termination of his employment at Portware, I find that the Agreement is valid and enforceable.").

Although the covenant's unlimited geographic scope gives the Court some pause, *see Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 332, 853 N.Y.S.2d 75 (N.Y.App.Div.2008) (holding unenforceable a non-compete covenant that covered the entire United States where employer only operated in eight states), the broad scope is not unreasonable *per se*, considering

the nature EvoMarkets' business. At oral argument on summary judgment, EvoMarkets represented to the Court that its business is conducted "worldwide" via telephone. Moreover, EvoMarkets' personnel, like Kelly, travel throughout the country for networking events, conferences, and to entertain prospective clients. Tr. at 49–50. Therefore, on the record as it now stands, the Court concludes that any geographic limitation on the covenant's scope would obviate its usefulness to EvoMarkets. If Kelly could simply travel to Wyoming, pick up a phone, and begin to solicit clients away from EvoMarkets immediately, the restrictive covenant would be meaningless. Therefore, the Court cannot find as a matter of law that the non-solicitation clause violates public policy in New York and denies Kelly's motion for summary judgment on his sixth cause of action.

### ii. Non–Recruitment

■ Likewise, covenants prohibiting former employees from recruiting workers of a former employer do not violate public policy *per se*. *See Veraldi v. American Analytical Labs.*, 271 A.D.2d 599, 706 N.Y.S.2d 158 (N.Y.App.Div.2000); *Global Telesystems, Inc. v. KPNQwest, N.V.*, 151 F.Supp.2d 478, 482 (S.D.N.Y.2001) ("New York recognizes the enforceability of covenants not to solicit employees.").[9]

■ The Court declines to reach the merits of this claim on ripeness grounds. Presence of a justiciable case or controversy is a *sine qua non* of federal judicial power; this requirement is not avoided by the procedural device of declaratory judgment, which itself requires an actual controversy. In declaratory judgment actions, ripeness remains a "constitutional prerequisite to exercise of jurisdiction by federal courts." *Federal Election Comm'n v. Central Long Island Tax Reform Committee*, 616 F.2d 45, 51 (2d Cir.1980). Federal courts have subject matter jurisdiction only over those suits that present "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (requiring "real and substantial controvers[ies] admitting of specific relief . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts").

Kelly has not indicated his desire or willingness to recruit any employee away from EvoMarkets.[10] Even if Kelly har

---

**9.** New York courts have applied a three-part reasonableness test to non-recruit covenants. *See Lazer, Inc. v. Kesselring*, 13 Misc.3d 427, 431, 823 N.Y.S.2d 834 (N.Y.Sup.Ct.2005). Generally, a restrictive covenant in an employment agreement "is reasonable only if it; (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–389, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (N.Y.1999). The legitimate interest of the employer must protect against *unfair* competition, not simply to avoid competition in a general sense. *Lazer*, 13 Misc.3d

at 432–33, 823 N.Y.S.2d 834. The case law implies that if the solicitation is directed by a competitor, or if confidential or proprietary information is at stake, the restriction is for a legitimate business purpose. *Id.*

**10.** Arguably, Kelly indicated such willingness only after the Court heard all argument on summary judgment, and only by letter, dated February 20, 2009. Therein Kelly's attorney noted that "Mr. Kelly advises that he has refrained, and for the time being intends to continue to refrain, from engaging in the solicitation or hiring of EvoMarkets employees that EvoMarkets asserted he is prohibited under ¶ 6.5 of the Employment Agreement from

bors a strong desire to do so, Kelly has not identified any such potential recruit, and the Court is neither inclined nor permitted to guess Kelly's recruitment strategy and target. The ripeness doctrine "cautions courts against adjudicating contingent future events that may not occur as anticipated, or indeed may not occur at all," *United States v. Broadcast Music, Inc.,* 275 F.3d 168, 178 (2d Cir.2001) (internal quotation marks and citations omitted), and "prevents courts from declaring the meaning of law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds v. I.N.S.,* 326 F.3d 351, 357 (2d Cir.2003); *accord Ehrenfeld v. Mahfouz,* 489 F.3d 542, 546 (2d Cir.2007). Consequently, the Court denies Kelly's motion for summary judgment on his fourth cause of action.[11]

## IV. Standard for a Preliminary Injunction and Temporary Restraining Order

■ Having resolved the claims upon which Kelly seeks summary judgment, the Court turns to EvoMarkets' request for preliminary injunctive relief. A party seeking preliminary injunction must establish: (1) either (a) a likelihood of success on the merits of its case or(b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied. *Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir.2008); *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152–53 (2d Cir.2007). The same standard applies to EvoMarkets' application for a temporary restraining order. *See, e.g., Andino v. Fischer,* 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction."); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.,* 190 F.Supp.2d 577, 580 (S.D.N.Y.2002) ("The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical.").

## V. Analysis

### a. Irreparable Harm

■ In a strikingly similar case, *Natsource LLC v. Paribello,* 151 F.Supp.2d 465 (S.D.N.Y.2001), Judge Leisure granted a preliminary injunction that prohibited the defendant, a former employee and energy broker, from violating provisions of his employment agreement, including a clause prohibiting solicitation of the company's customers for up to 120 days. In

soliciting or hiring." The letter continues, "However, Mr. Kelly continues to be interested in working with a former employee of EvoMarkets." Letter from Gary Trachten to Judge Stephen C. Robinson, dated Feb. 20, 2009.

11. Even assuming that the non-recruitment provision is ripe for adjudication, the Court declines to assess its validity. The Declaratory Judgment Act "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (internal quotation marks omitted) (collecting cases); *see also Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir.2003) (per curiam) (District courts have "a broad grant of discretion to ... refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."). The Court may consider appropriate equitable, prudential, policy, or merits-based considerations when electing to exercise declaratory relief. *Id.* at 136–37, 127 S.Ct. 764. Given the paucity of the record on these matters and the reasonable duration of the covenant, construing the scope and legality of the non-recruitment provision at this time would be imprudent.

finding irreparable harm, Judge Leisure noted:

> The customers have developed a strong relationship with Paribello [the defendant] over the years and ten months he spent at Natsource. If Paribello is allowed to immediately work for a competitor, or otherwise solicit these customers, these customers are likely to follow him because of their unique relationship.... According to [a Natsource manager], it takes three to six months for brokers to develop strong relationships with traders. Natsource would be irreparably harmed if it did not receive the benefit of its bargain and customers left Natsource to follow Paribello within the initial 120 days following Paribello's termination.

151 F.Supp.2d at 469. As the court noted in *Natsource*, the Second Circuit recognizes that "[i]f the unique serves of [an] employee are available to a competitor, the employer obviously suffers irreparable harm." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir.1999) (reasoning that "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce and indeterminate amount of business in years to come"). Persuaded by Judge Leisure's sound reasoning, this Court finds that EvoMarkets would suffer irreparable harm if Kelly is immediately allowed to begin contacting and soliciting EvoMarkets' customers on behalf of a competitor brokerage firm.

#### b. Consideration of the Merits

In its Amended Answer, EvoMarkets asserts several counterclaims.[12] However, only its counterclaim for breach of contract was raised during oral argument for a preliminary injunction. It would be inequitable to consider the merits of EvoMarkets' other claims on this application, as Kelly did not have adequate notice or an opportunity to be heard in opposition. Consequently, the Court will only consider the merits of EvoMarkets' contract claim on the current motion for a preliminary injunction.

■ EvoMarkets only needs to demonstrate a likelihood of success on the merits of one claim to warrant injunctive relief. *Payment Alliance Int'l, Inc. v. Ferreira*, 530 F.Supp.2d 477, 483 (S.D.N.Y.2007). For the reasons set forth in section III, above, EvoMarkets has presented sufficiently serious questions going to the merits to make them a fair ground for litigation. *Doninger*, 527 F.3d at 47. The Court also finds a balance of hardships tipping decidedly in favor of EvoMarkets. If Kelly is immediately allowed to begin soliciting EvoMarkets' clients—his expressed intention—EvoMarkets risks losing this business forever. Kelly, on the other hand, is free to begin employment, even with a competitor of EvoMarkets, and his livelihood is not jeopardized by this injunction. He is prohibited from improperly contacting specified customers of EvoMarkets in violation of his contractual agreement only until May 5, 2009—a mere two more months.

Consequently, the Court grants EvoMarkets' request for a TRO and a preliminary injunction. Other courts have granted preliminary injunctions under similar circumstances. *See Natsource*, 151 F.Supp.2d at 468–78 (issuing preliminary injunction on non-solicitation); *Health-*

---

**12.** The Amended Answer contains six counterclaims in all. The first three counterclaims, quizzically, are for a temporary restraining order, a preliminary injunction, and a permanent injunction. As these claims are more accurately characterized as requests for relief, the Court does not consider them at this time. The remaining counterclaims are for breach of contract, breach of duty of loyalty, and recovery under the faithless servant doctrine.

*world Corp.,* 12 A.D.3d at 279, 786 N.Y.S.2d 8 (affirming preliminary injunction on non-solicitation); *Portware,* 11 Misc.3d 1059(A), at *5 (issuing preliminary injunction on non-solicitation). Upon notice that EvoMarkets has posted a bond, pursuant to Rule 65(c), in the amount of $75,000, Kelly is preliminarily enjoined from contacting and soliciting current or potential clients of EvoMarkets consistent with his obligations under clause 6.3 of the Employment Agreement until the earlier of—(1) a final disposition in this case or (2) May 5, 2009.

## VI. Sealing the Record

█ EvoMarkets "cross-moved" for an order to place under seal the parties' confidential Employment Agreement, attached to the Complaint as Exhibit A and attached to Kelly's Affidavit, dated Jan. 5, 2009, as Exhibit A. The Employment Agreement, by its express terms, is confidential and Kelly was prohibited from disclosing its content. Employment Agreement, cl. 6.4. Finding good cause to keep employment and compensation agreements confidential, the Court grants EvoMarkets' motion to seal the portions of the record that disclose the parties' Employment Agreement.

## VII. Conclusion

Ultimately, Kelly agreed to abide by the terms of this contract—including the restrictive covenants—and was paid handsomely in return for his services. Clause 2.3 of the Employment Agreement explicitly states that EvoMarkets regards the restrictive covenants as essential consideration, and the Court is not inclined simply to disregard the parties' bargain. After examining the record and considering all the arguments presented by both sides, the Court rules accordingly: Kelly's motion for summary judgment is denied; EvoMarkets' motions to seal a portion of the record and to preliminarily enjoin Kelly from violating clause 6.3 of the Employment Agreement are granted. The Clerk of the Court is directed to close docket entries 13, 15, and 23.

*It is so ordered.*